Pennsylvania Labor Relations Board, Appellant,
*v.* Loose.

Argued January 12, 1961. Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*James F. Wildeman,* Assistant Attorney General, with him *Raymond Kleiman,* Assistant Attorney General, and *Anne X. Alpern,* Attorney General, for Pennsylvania Labor Relations Board, appellant.

*Thomas E. Waters, Jr.,* with him *Donald A. Gallagher,* and *Waters, Cooper & Gallagher,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 13, 1961:

H. Stanley Loose, trading as Baederwood Grille, operated a restaurant in Jenkintown, Montgomery County, where, in *August, 1957,* he employed in his kitchen unit eleven persons consisting of a chef, cooks, sandwich-salad men and dishwashers. As a result of a six to five vote of these employees at a representation election, the Pennsylvania Labor Relations Board on *August 15, 1957* (the dates are important as will later appear), certified the Chefs, Cooks, Pastry Cooks and Assistants Union, Local 111, affiliated with the Hotel and Restaurant Employes and Bartenders International Union, A.F.L.-C.I.O., as the collective bargaining agent of the employees in the employer's kitchen unit. Negotiations between the Union and Loose were entered upon with a view to arriving at a collective bargaining agreement, but without success.

On July 30, 1958, the Union filed with the Labor Relations Board a charge against Loose of unfair labor practices and, as a consequence, the Board two days later issued a complaint thereon against him. On *October 27, 1959,* the Board, by a two to one de-

cision, held that Loose had interfered with his employees in the exercise of their rights within the meaning of Section 6(1)(a) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, No. 294, as amended, 43 PS §211.6(1)(a), and had refused to bargain collectively with the representative of his employees within the meaning of Section 6(1)(e) of the Act, 43 PS §211.6(1)(e), and ordered him, inter alia, to cease and desist from engaging in these unfair labor practices and, upon request, to bargain collectively with the Union as the exclusive representative of the employees of his designated unit.

Loose petitioned the Court of Common Pleas of Montgomery County for a review of the Board's order; the Board, in turn, petitioned the court for enforcement of the order. On *June 16, 1960,* the court entered an order setting aside the Labor Board's order and denying the Board's petition for its enforcement. The matter is now before us on the Board's appeal.

Certification of a collective bargaining representative by the Labor Board "shall be binding for a period of one year, or for a longer period if the contract so provides, even though the unit may have changed its labor organization membership." Section 7(c) of the Pennsylvania Labor Relations Act, as amended, 43 PS §211.7(c). The effect of this provision is to create for a period of one year a duty upon the employer to bargain in good faith with the certified representative of his employees. At the expiration of a yearly period, however, in the absence of a contract providing otherwise, the employer's duty to bargain with the certified representative ceases, and he may then question the representative's status and its right to speak for a majority of his employees. The findings of fact of the Labor Board, if supported by the evidence, are conclusive on appeal. Section 9(a) of the

Pennsylvania Labor Relations Act, as amended, 43 PS §211.9(a). In this case the Board found, and the finding is supported by the evidence, that in *July of 1958*, after approximately eleven months of negotiations, Loose was willing to execute a collective bargaining agreement but only if such agreement would expire on August 15, 1958, the termination date of the Union's certification. The employer's refusal to sign a contract extending beyond August 15, 1958 (a period of about 30 to 40 days), was the basis of the Board's conclusion that he was guilty of unfair labor practices.

The basic question then, in this case, is whether employer Loose's insistence upon a contract of so short a term was consistent with bargaining in good faith as required of him by the Pennsylvania Labor Relations Act. While there appear to be no Pennsylvania decisions in point, we recognized in *Shafer Petition*, 347 Pa. 130, 132-135, 31 A. 2d 537 (1943), that the Pennsylvania Labor Relations Act was obviously patterned after the National Labor Relations Act and that federal decisions involving provisions of the latter act may be looked to for guidance in interpreting similar provisions in the Pennsylvania statute. Clauses (1) and (5) of Section 8(a) of the National Labor Relations Act[1] are similar to clauses (a) and (e) of Section 6(1) of the Pennsylvania Labor Relations Act; and the National Labor Relations Board has adopted the one-year certification rule whereby a certified union's majority status is conclusively presumed to continue for one year following certification: *Lift Trucks, Inc.,* 75 N.L.R.B. 998, 21 L.R.R.M. 1101 (1948). In *Hinde & Dauch Paper Co.,* 104 N.L.R.B. 847, 32 L.R.R.M. 1169, 1170

---

[1] Act of July 5, 1935, c. 372, 49 Stat. 449, as amended, 29 U.S.C.A., §158(a) (1) and (5).

(1953), the National Labor Relations Board said that "the term of a contract, like its substantive provisions, is a bargainable matter. If it is insisted upon in bad faith or to achieve an illegal purpose, the employer or the labor organization, as the case may be, plainly violates its bargaining obligation. . . . surely a well-founded doubt that the union is the majority representative is as 'legitimate' a reason for permitting bargaining about the duration of the contract as economic considerations of one sort or another. Accordingly, we find that the respondent did not violate the Act in refusing in good faith to agree to a contract term extending beyond the certification year." See, also, *Lloyd A. Fry Roofing Co.,* 123 N.L.R.B. 647, 43 L.R.R.M. 1507, 1508 (1959).

The crucial issue in this case, therefore, is whether or not employer Loose's refusal to sign a contract extending beyond the Union's one-year certification period was made in good faith, pursuant to a well founded doubt that the Union any longer represented a majority of his employees. On this point, the Board, in its two to one decision, found adversely to Loose which would be conclusive of this factual issue on appeal if the finding is supported by the evidence. The fact is, however, that the evidence does not support such a finding. When Loose was called as on cross-examination at the hearing before the Board he testified as follows: "Q. Now, do I understand that your position in June and July of 1958 was that you wanted a contract to run until August 15, 1958? A. I was willing to go along with the agreement to the termination date of the certification. Q. You did not want to sign a contract beyond August 15, 1958? A. That's right. I didn't feel I was in a position to obligate my employees. My employees have changed since the certification of the Union as the collective bargaining agent, and my new employees' position was

that they did not want to belong to the Union. Q. How did you know that? A. I didn't except for the fact that they came to me from union houses and they told me that they preferred to work at a non-union house." On redirect examination, Loose testified as follows: "Q. Mr. Loose, the subject of this proceeding is a unit consisting of your kitchen employes, is that correct? A. Correct. Q. At the date of the election in July of 1957, how many employes were certified to vote in that election? A. Eleven. Q. Since that time has there been any change in personnel in that unit? A. Yes, I have had a considerable turnover. Q. Did that change in personnel have anything to do with the position you have stated as being your position with regard to the term of the contract? A. Yes. Q. Did the change of personnel in that unit have any bearing upon your decision that you should not sign a contract beyond August 15, 1958? A. It certainly did. Q. Please explain why? A. There are workers in my kitchen now who left union jobs to come to work for me because I have a non-union shop, and they would not continue to work for me if I signed a contract beyond the 15th of August, which would automatically make them members of the Union. Q. I take it from what you just said that it is your impression that the union is not now actually representing your employes? A. The Union does not now represent a majority of the workers in my kitchen."

None of the above facts as testified to by Loose were contradicted. The burden of proving a charge of unfair labor practices is upon the complainant, and that burden has not been met by the complainant in this case. The evidence appearing of record does not support the finding by the majority of the Board that Loose was acting in bad faith when he insisted that any contract that he would sign should last only to the end of the certification year. He knew that

the Union had won certification by the narrow margin of a six to five vote, that since the election, almost a year in the past, he had had a considerable turnover in his personnel, and that many of his new employees informed him that they did not want to belong to the Union. Such being the proven circumstances, reasonable grounds existed for Loose's avowed belief that the Union no longer represented a majority of his employees. And, when an employer has a bona fide doubt about a certified union's continuing representation of a majority of his employees, he does not commit an unfair labor practice by insisting that any agreement that he signs with the union be limited in time to the termination of the union's certification year.

Order affirmed.