## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## The GREYHOUND CORPORATION (SOUTHERN GREYHOUND LINES DIVISION) and Floors, Inc. of Florida, Respondents.

### No. 23110.

United States Court of Appeals Fifth Circuit.

Nov. 17, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

William B. Peer, I. J. Gromfine, Herman Sternstein, Washington, D. C., Zimring, Gromfine & Sternstein, Washington, D. C., of counsel, for Amalgamated Transit Union, AFL–CIO, intervenor.

Alexander E. Wilson, III, Atlanta, Ga., Wilson, Branch, Barwick & Vandiver, Alexander E. Wilson, Jr., Atlanta, Ga., for respondent Floors, Inc. of Florida.

Warren E. Hall, Jr., Wofford H. Stidham, Bartow, Fla., for respondent Greyhound Corp.

Before RIVES, BELL and THORNBERRY, Circuit Judges.

RIVES, Circuit Judge:

This proceeding for enforcement of a National Labor Relations Board order presents the questions of whether substantial evidence on the record as a whole supports the Board's finding that Greyhound [1] and Floors [2] are joint employers of the porters, janitors and maids sought to be represented by the Union,[3] and whether those employees constitute an appropriate unit for purposes of collective bargaining.

Those issues eventuate from litigation which has extended over more than a decade. Greyhound's own employees formerly performed the janitorial and loading services at each of Greyhound's terminals, and were represented by the Union. In 1954, Greyhound and Floors entered into an agreement by which Greyhound subcontracted to Floors the performance of janitorial and loading services at Greyhound's Jacksonville, Florida, terminal. When the Union contested the right of Greyhound to subcontract the janitorial and loading work, Greyhound brought an action against the Union for a declaratory judgment which finally resulted in a decision by this Court upholding Greyhound's right to subcontract this part of its operations. Amalgamated Association etc. v. The Greyhound Corporation, 5 Cir., 1956, 231 F.2d 585, 57 A.L.R.2d 1394. In 1951 and 1958 the same agreement, as amended and revised, was put into effect at Greyhound's terminals in St. Petersburg, Tampa and Miami.

In 1961 the Union filed an amended representation petition with the Board naming Greyhound and Floors as co-employers of the employees involved. In 1962 the Board issued a decision and direction of election finding Floors and Greyhound to be co-employers of the employees and directing an election in the unit petitioned for by the Union. Greyhound then filed suit in the federal district court seeking to enjoin the election ordered by the Board. The district court held that the Board had acted in excess of its statutory authority in finding Greyhound to be co-employer with Floors and permanently enjoined the holding of the election. The Greyhound Corporation v. Boire, Regional Director, S.D.Fla.1962, 205 F.Supp. 686. The district court held that the findings of the Board "establish as a matter of law that Floors, Inc. is an independent contractor and, for the purposes of collective bargaining, its employees are not the employees of the plaintiff [Greyhound]." (205 F.Supp. at 689). On appeal, in a per curiam opinion, this Court expressed itself as in agreement with the principles stated and the decision reached by the district court and affirmed. Boire, Regional Director v. The Greyhound Corporation, 5 Cir. 1962, 309 F.2d 397. The Supreme Court granted certiorari and subsequently ruled that the district court did not have jurisdiction to issue the injunction. Boire v. The Greyhound Corporation, 1964, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed. 2d 849. In the course of its opinion, the Supreme Court said:

"It is said that the Board's finding that Greyhound is an employer of employees who are hired, paid, transfer-

1. The Greyhound Corporation (Southern Greyhound Lines Division).

2. Floors, Inc. of Florida.

3. Amalgamated Transit Union, AFL–CIO.

red and promoted by an independent contractor is, \* \* \*, plainly in excess of the statutory powers delegated to it by Congress. This argument, we think, misconceives both the import of the substantive federal law and the painstakingly delineated procedural boundaries of Kyne [Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210.]

"Whether Greyhound, as the Board held, possessed sufficient control over the work of the employees to qualify as a joint employer with Floors is a question which is unaffected by any possible determination as to Floors' status as an independent contractor, since Greyhound has never suggested that the employees themselves occupy an independent contractor status. And whether Greyhound possessed sufficient indicia of control to be an 'employer' is essentially a factual issue, unlike the question in Kyne, which depended solely upon construction of the statute."

(376 U.S. at 481, 84 S.Ct. at 899.)

Subsequent to the Supreme Court's decision, an election was held by the Board and the Union was certified as bargaining representative. Floors and Greyhound then refused to bargain with the Union and the Board issued a complaint alleging a violation of Section 8 (a) (1) and (5) [4] of the Act on the part of Floors and Greyhound. The parties [5] entered into a stipulation waiving a hearing before a Trial Examiner and submitting the case directly to the Board for findings of fact, conclusions of law, and an order. The Board made full and elaborate findings of fact which it summarized as follows:

"Upon our consideration of the record in its entirety, we are satisfied that the evidence cogently demonstrates that Greyhound and Floors share, or co-determine, those matters governing essential terms and conditions of employment of the porters, janitors, and maids herein in such a manner as to support our finding that their status is that of joint employers. It is clear from the circumstances of this case that, whatever Floors' status as an independent contractor with Greyhound, Greyhound has reserved to itself, both as a matter of express contractual agreement and in actual practice, rights over these employees which are consistent with its status as their employer along with Floors.[18]

"18. Both Employers have strenuously contended and argued in their briefs the premise that since Floors is an independent contractor *vis-a-vis* Greyhound, this must, as a matter of law, preclude any finding by us other than that Floors is the sole employer of these workers. This contention has been disposed of by the U.S. Supreme Court's decision in the ancillary proceeding, supra [376 U.S. 473, 481, 84 S.Ct. 894], where the Court held, 'that the question of whether Greyhound possessed sufficient control over the work of these employees to qualify as a joint employer with Floors is a question which is unaffected by any possible determination as to Floors' status as an independent contractor.' (sic) Further, we reject Floors' contention concerning the inclusion in the unit of its other employees in the cities where Greyhound terminals are located in the light of our findings herein. In this connection, we note, in addition, that the Union is unwilling to represent Floors' employees who are not based at the Greyhound terminals and that no labor organization seeks to represent Floors' employees upon a broader basis. Finally, the record conclusively demonstrates that there is at most only minimal interchange between the subject employees and Floors' other employees in these communities."

4. "(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\*    \*    \*    \*    · \*

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."
29 U.S.C.A. § 158(a) (1) and (5).

5. Greyhound, Floors, the Union, and the General Counsel of the Board.

We rely, in sum, particularly upon the following circumstances: The Board's findings and conclusions in its decision in the related representation case; the fact that these employees constitute a homogeneous, readily identifiable and stable unit by virtue of their previous bargaining history and their lack of contact and interchange with Floors' other employees; the nature of the service agreements which bestow upon Greyhound the right to (1) establish work schedules, and assign employees to perform the work: (2) specify the exact manner and means through which the work will be accomplished and issue orders or instructions to that effect, especially when Floors' supervisors are absent from Greyhound premises; and (3) control straight time wage rates and overtime hours and pay rates in accord with the fixed costs, percentages, and total amounts due to Floors for weekly and annual periods, as set forth in the agreements; the role of the porters (who comprise by far the largest group in the unit) as integral parts of Greyhound's transportation enterprise, and their use of Greyhound's equipment and supplies in their work performance; and, finally, the fact that in the course of their duties, the porters are given detailed supervision by other Greyhound personnel.

As we have seen, the Supreme Court in Boire v. Greyhound Corporation supra, held the question of " * * * whether Greyhound possessed sufficient indicia of control to be an 'employer' is essentially a factual issue * * *." 376 U.S. at 481, 84 S.Ct. at 899. A careful study of the record and joint appendix in connection with the briefs and oral argument leads us to conclude that substantial evidence on the record as a whole supports the Board's findings.

Enforcement of the Board's order does not prevent Floors and Greyhound from continuing their contractual arrangement. As well stated in the Board's reply brief, they "may retain their present relationship in every respect except one—they may not finally establish the wages, hours, and other conditions of employment of unit employees by contract *inter se*, although they may take a common position and, in good faith, bargain to impasse with the Union."

Essentially this case presents factual issues to be determined in accordance with the record and the circumstances of this particular case. To further discuss the many decisions brought forward by the diligence of counsel would not help us to dispose of the questions of fact and would unnecessarily prolong this opinion. The Board's order will be

Enforced.