341 A.2d 456

Robert W. COSTIGAN, Register of Wills of Philadelphia County and Clerk of the Orphans' Court Division of the Court of Common Pleas of Philadelphia County, Appellant,

v.

PHILADELPHIA FINANCE DEPARTMENT EMPLOYEES LOCAL 696, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO by Charles Santore and John Costa, Trustees ad Litem.

Supreme Court of Pennsylvania.

Argued Nov. 25, 1974.

Decided June 7, 1975.

426

Nathan L. Posner, Herbert S. Levin, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Howard R. Flaxman, Philadelphia, for appellant.

Leonard M. Sagot, Philadelphia, Randall J. Sommovilla, Thomas W. Jennings, Philadelphia, for appellee.

Edward H. Feege, Allentown, Charles N. Sweet, Morrisville, Stephen J. Cabot, Philadelphia, amicus curiae Counsel for the Pennsylvania State Association of County Commissioners; Curtin & Heefner, Morrisville, Hayes

& Feege, P. C., Allentown, Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, of counsel.

Before JONES, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Robert Costigan, Register of Wills of Philadelphia, brought this action in equity to enjoin arbitration under a collective bargaining agreement entered into by his predecessor, William King, and appellee Philadelphia Finance Department Employees Local 696, the collective bargaining agent of the employees of the Register of Wills.[1] Appellant contended·that the collective bargaining agreement was void because 1) Register King was without power to enter into the agreement or to bind his successor to its terms and 2) the City of Philadelphia was a joint employer of the employees in question but not a party to the agreement.[2] The trial court

1. In fact, the union represents two groups of employees: those employed by the Register of Wills and those employed by the Clerk of the Orphans' Court Division of the Court of Common Pleas. While the Register of Wills is ex officio Clerk of the Orphans' Court Division of the Court of Common Pleas, a degree of separation between the two offices is maintained. The joint requests for certification of the union as collective bargaining agent provided that the employees of each office would constitute a separate bargaining unit. However, a single collective bargaining agreement covering both groups of employees was executed by Register King and the union. Consequently, the two groups of employees will be considered together in this opinion.

2. Appellant now further contends that (1) the Board of Judges of the Court of Common Pleas is also a joint employer of the employees; (2) the employees in question are "directly involved with and necessary to the functioning of the courts" and yet are represented by an organization affiliated with another organization representing another classification of public employees in violation of section 604 of the Public Employee Relations Act, Act of June 23, 1970, P.L. 563, No. 195, art. VI, § 604, 43 P.S. § 1101.-604 (Supp.1974); and (3) the collective bargaining agreement is void because not entered into in good faith, see id. § 701, 43 P.S. § 1101.701. These contentions were not presented to the trial

rejected both contentions, dismissed the complaint, and directed that the arbitration proceed. This appeal followed.[3] We conclude that the City of Philadelphia is a joint employer of the employees of the Register of Wills and therefore reverse.[4]

Sometime prior to November, 1971, appellee notified Register King that 34 of the 38 employees in the office of the Register of Wills and 19 of the 20 employees in the office of the Clerk of the Orphans' Court had signed authorization cards designating appellee as their exclusive bargaining representative. Appellee therefore demanded that the Register recognize it as the collective bargaining agent for the employees. Several meetings were held relating to the demand and the terms of a possible collective bargaining agreement. While these nego-

court and are therefore unavailable on appeal. *Wenzel v. Morris Distributing Co.*, 439 Pa. 364, 373–74, 266 A.2d 662, 667 (1970); *Corabi v. Curtis Publishing Co.*, 437 Pa. 143, 150, 262 A.2d 665, 668 (1969). Even if, as appellant contends, the first of these issues was raised by passing reference in appellant's opening argument to the trial court, it was not covered by any exception to the adjudication and is therefore waived. Pa.R.Civ.P. 1518, 12 P. S. App.; *Nord v. Devault Contracting Co.*, 460 Pa. 647, 649 n. 3, 334 A.2d 276, 277 n. 3 (1975).

Appellant relies upon *Tragresser v. Cooper*, 313 Pa. 10, 169 A. 376 (1933), for the proposition that "even if [an] issue was not raised below, it can be raised on appeal [when] public policy is involved." Appellant misapprehends the rule of *Tragresser*. The only issues considered by this Court in *Tragresser* were the construction and validity of a statute, both of which had been presented to the trial court. The language relied upon by appellant simply noted that the Court, in construing the statute, was not limited to the considerations presented to the trial court. Moreover, the proposition urged by appellant is flatly contrary to our recent decisions in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), and *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), in which we held that no issue could be considered as a ground for reversal unless it had been properly presented to the trial court and preserved for appellate review.

3. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(2), 17 P.S. § 211.202(2) (Supp.1974).

4. Our disposition of this issue makes it unnecessary to consider the authority of Register King to execute a collective bargaining agreement binding on his successor.

tiations were in progress, an election for Register of Wills was held at which appellant was the victor.

Register King agreed to recognize appellee as the bargaining representative of the employees in the two offices and, on November 30, 1971, he joined with appellee in a joint petition to the Pennsylvania Labor Relations Board (Board) requesting certification of appellee as the exclusive collective bargaining representative of those employees. Appellant was advised of this development and, on November 29, 1971, filed with the Board a letter objecting to any action on the request for certification until appellant had taken office. The Board has taken no action on the joint petition for certification.[5]

On December 29, 1971, Register King entered into a written collective bargaining agreement with appellee to take effect at noon on December 31, 1971, and expire at noon on June 30, 1973.[6] That agreement contained, inter alia, the following provisions:

"During the term of this AGREEMENT, the Employer shall not lay off any Employee of the bargain-

---

5. On February 7, 1972, the Board denied the request of appellant, who had by then become the Register of Wills, to withdraw the joint petition for certification. Further action has apparently been deferred at the request of the parties. Neither party has questioned the propriety of presenting the question of who is the employer to the courts without first obtaining a determination on that point by the Board in the certification proceedings. We therefore do not consider that issue.

6. While the collective bargaining agreement has expired, we conclude that this does not render the case moot. While the expiration renders questionable the availability of reinstatement as a remedy for the purportedly wrongful discharges, it is clear that the arbitrator could grant back pay for the period covered by the agreement if he concluded that this was an appropriate remedy. This prospect alone is sufficient to prevent the case from being moot. See *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Kates & Barker, Mootness in Judicial Proceedings: Toward a Coherent Theory, 62 Calif.L.Rev. 1385, 1389–91 (1974). Moreover, the availability of the remedy of reinstatement is itself a question turning upon the interpretation of the agreement, which would be a matter for the arbitrator, at least in the

ing unit who was employed at the time this AGREE-MENT was executed.

. . . . . . .

"Employees shall not be disciplined or discharged except for just cause."

On December 30, 1971, Register King took the oath of office as a judge of the court of common pleas. On the same day, appellant notified many of the employees in the bargaining unit that he would not require their services after he took office on January 3, 1972. Upon assuming office, appellant orally discharged these employees, and replaced them with others.

Appellee claimed that these discharges were in violation of the collective bargaining agreement and, pursuant to the grievance procedure established by the agreement, initiated proceedings to submit this question to arbitration. Appellant then filed this action in equity seeking to enjoin the arbitration on the ground that the collective bargaining agreement was invalid. A trial was held on July 12, 1972, and an adjudication dismissing the complaint followed on January 31, 1974. On April 15, 1974, a final decree was entered overruling appellant's exceptions and this appeal followed.

We have previously addressed the question of who is the employer of particular public employees in *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974). There we recognized that:

"The determination of *who* is the employer or employers of a group of employes *is not governed* by Act 195, however, even though the Act may have raised certain considerations in this regard which were not envisioned prior to its passage.

first instance, if the agreement were valid. There is no occasion in this case to consider whether a provision in an agreement which did permit the arbitrator to award reinstatement under the circumstances here presented would be valid. See note 4 supra.

"This Court has not heretofore been called upon to determine who is the particular employer of a given employe in relationship to Act 195, the Pennsylvania Labor Relations Act, P.L. 1168, No. 294, § 1 et seq., as amended, 43 P.S. § 211.1 et seq., or the Labor Anti-Injunction Act, P.L. 1198, § 1 et seq., as amended, 43 P.S. § 206a et seq. Each of these acts has defined 'employer' only for purposes of the respective acts. Our decisions under the Pennsylvania Labor Relations Act and the Labor Anti-Injunction Act have dealt with the issue of whether the employer in question came within the scope of the pertinent act. E. g., *Pennsylvania Labor Relations Board v. Overbrook Golf Club*, 385 Pa. 358, 123 A.2d 698 (1956); *Locust Club v. Hotel and Club Employees' Union*, 397 Pa. 357, 155 A.2d 27 (1959). The more fundamental question of whether an employer-employe relationship exists is one of first impression with this Court in the context of labor relations. The tests developed in other areas of the law for ascertaining the existence of an employer-employe relationship, however, are equally probative of the issue as presented in the instant case."

Id. at 461–62, 322 A.2d at 364–65 (emphasis in original, footnote omitted).

Although common law principles relating to the existence of an employer-employee relationship are relevant to the determination of that question under the Public Employee Relations Act, these principles are not to be applied without regard for the purposes and policies of that Act. In this regard, we find highly persuasive the analysis of the United States Supreme Court in *NLRB v. E. C. Atkins & Co.*, 331 U.S. 398, 67 S.Ct. 1265, 91 L.Ed. 1653 (1947).[7] That case considered whether certain

7. We recognized in *PLRB v. Loose,* 402 Pa. 620, 623, 168 A.2d 323, 325 (1961), that practice under the National Labor Relations Act may be looked to for guidance in interpreting similar provisions of Pennsylvania labor legislation. While we noted in *PLRB v. State College Area School District,* 461 Pa. 494, 499, 337 A.2d

guards employed at a defense plant, who were required to be civilian auxiliaries of the military police of the United States Army, were employees of the defense contractor within the meaning of the NLRA. In sustaining the NLRB's conclusion that the guards were employees of the contractor, the Court wrote:

"[T]he terms 'employee' and 'employer' in [the National Labor Relations Act] carry with them more than the technical and traditional common law definitions. They also draw substance from the policy and purposes of the Act, the circumstances and background of particular employment relationships, and all the hard facts of industrial life.

"And so the Board, in performing its delegated function of defining and applying these terms, must bring to its task an appreciation of economic realities, as well as a recognition of the aims which Congress sought to achieve by this statute. This does not mean that it should disregard the technical and traditional concepts of 'employee' and 'employer.' But it is not confined to those concepts. It is free to take account of the more relevant economic and statutory considerations.

. . . . . . .

"The most important incidents of the employer-employees relationship—wages, hours and promotion—remained matters to be determined by respondent rather than by the Army. Respondent could settle those vital matters unilaterally or by agreement with the guards. And the guards were free to negotiate and bargain individually or collectively on these items. It is precisely such a situation to which the National Labor Relations Act is applicable. It is a situation where collective

262, 264 (1975), that special considerations affecting public employment precluded direct application under the Public Employee Relations Act of NLRA precedents dealing with the scope of bargaining, we perceive no such special considerations bearing upon the issue of who is the employer of particular employees. We therefore find NLRA precedents highly relevant to this issue.

bargaining may be appropriate and where statutory objectives may be achieved despite the limitations imposed by militarization. Under such circumstances, the Board may properly find that an employee status exists for purposes of the Act.

"In this setting, it matters not that respondent was deprived of some of the usual powers of an employer, such as the absolute power to hire and fire the guards and the absolute power to control their physical activities in the performance of their service. Those are relevant but not exclusive indicia of an employer-employee relationship under this statute. As we have seen, judgment as to the existence of such a relationship for purposes of this Act must be made with more then the common law concepts in mind. That relationship may spring as readily from the power to determine the wages and hours of another, coupled with the obligation to bear the financial burden of those wages and the receipt of the benefits of the hours worked, as from the absolute power to hire and fire or the power to control all the activities of the worker. In other words, where the conditions of the relation are such that the process of collective bargaining may appropriately be utilized as contemplated by the Act, the necessary relationship may be found to be present."

Id. at 403, 413–14, 67 S.Ct. at 1268–69, 1273.

 In the instant case, no single entity controls all of the terms of the employment relationship. The Register of Wills is conceded by all parties to have the exclusive power to hire, fire, promote, and direct the work of the employees. The City of Philadelphia pays most of the employee salaries and other compensation costs of the office and exercises considerable control over the fringe benefits accorded the employees, which include enrollment under the City's group life and health insurance

plans and coverage by the City's pension plan.[8] Thus the Register and the City each exercise independent control over important "conditions of the relation [which] are such that the process of collective bargaining may appropriately be utilized as contemplated by the Act," and both must be deemed employers for purposes of the Act. Cf. *Fischer v. Rzymek,* 15 Pa.Cmwlth. 105, 324 A.2d 836 (1974) (opinion of Rogers, J., in chambers); *Ace-Alkire Freight Lines, Inc. v. NLRB,* 431 F.2d 280 (8th Cir. 1971); *S. S. Kresge Co. v. NLRB,* 416 F.2d 1225 (6th Cir. 1969); *Gallenkamp Stores Co. v. NLRB,* 402 F.2d 525 (9th Cir. 1968); *NLRB v. Greyhound Corp.,* 368 F. 2d 778 (5th Cir. 1966); *Ohio Inns,* 205 N.L.R.B. No. 102, 84 L.R.R.M. 1005 (1973); *Massachusetts SPCA,* 203 N. L.R.B. No. 22, 83 L.R.R.M. 1017 (1973); *Floyd Epperson,* 202 N.L.R.B. No. 9, 82 L.R.R.M. 1473 (1973).

A similar result has been reached under the New York Public Employees Fair Employment Act. In *County of Ulster v. CSEA Unit of Ulster County Sheriff's Department,* 37 A.D.2d 437, 326 N.Y.S.2d 706 (3d Dept. 1971), a county and its sheriff were held to be joint employers of the sheriff's deputies because each had an important degree of control over the employment relationship. We

**8.** There is much dispute between the parties regarding the degree of control vested in the Register regarding such questions as holidays, vacations, sick leave, etc. The agreement involved in this case provides that these benefits shall be the same as those granted to employees of the City represented by a specified union (which apparently represents all of those employed directly by the City who are covered by the Public Employee Relations Act). Appellant maintains that he is powerless to deviate from City practice in these matters. Appellee maintains, that, despite a long tradition of uniformity on these matters, appellant is free to make such provision for them as he deems proper, subject only to the constraints imposed by the overall appropriations available to the office. We find it unnecessary to resolve this dispute in view of the uncontested fact that the City provides several key benefits not included in the budget of the Register of Wills. These benefits themselves constitute an important term of the employment and are a proper subject for collective bargaining.

believe that the reasoning of the court in that case is equally applicable here:

"While a finding of joint employers is rare, the appellant's determination of the practical necessity for such a finding is supported by the record and should not be disturbed. The Taylor Law was enacted with the hope that it would insure tranquility in the government's labor relations by protecting the rights of employees and the public generally. The prohibition of public strikes was continued, but the statute allowed employees to redress their grievances by requiring that the public employer negotiate and contract with employee groups with respect to the terms and conditions of employment. . . . The statute mandates that employees negotiate with respect to terms and conditions of employment. . . . Obviously, these negotiations cannot be effective if employees are obliged to negotiate with an employer who is without power with respect to the matter in dispute."

Id. at 439, 326 N.Y.S.2d at 709.

Appellee strenuously urges that the mere fact that the office of the Register of Wills is funded by another public agency (the City) does not establish the latter as the public employer of the employees of that office. While we agree with this proposition,[9] it has no application here, for the City in fact exercises control over impor-

---

9. In *Sweet v. PLRB*, 457 Pa. 456, 462, 322 A.2d 362, 365 (1974), we noted that, "The duty to pay an employee's salary is often co-incident with the status of employer, but not solely determinative of that status." Thus, for example, in *Roane-Anderson Co.*, 95 N.L.R.B. 1501 (1951), a company had contracted with the Atomic Energy Commission to perform maintenance and operations functions for the Oak Ridge, Tennessee, town site and military reservation. Its contract obligated it to maintain payroll records and pay the salaries of the Oak Ridge police, but the determination of the terms and conditions of their employment and the supervision of their performance was entirely in the hands of the AEC. Under these circumstances, the NLRB held that the company was not the employer of the police despite the fact that it paid their salaries.

tant aspects of the employment relation. Compare *Dauphin County Child Care Services,* Case No. PERA–R–5131–C (PLRB, Sept. 4, 1974) (agency receipt of 60% of its funding from the Commonwealth and requirement that it select new employees from civil service lists compiled by the Commonwealth does not preclude it from being the public employer of those who are employed in the agency where agency exercises full control over the terms and conditions of employment) ; *County of Erie v. Board of Trustees,* 62 Misc.2d 396, 308 N.Y.S.2d 515 (Sup.Ct.Erie 1970) (public library which is funded by county but whose board of trustees exercises full control over hiring, firing, and all other terms and conditions of employment subject to the limits of available appropriations is sole employer of library employees).

■ Because the City of Philadelphia, the joint employer of the employees involved in this case, was not a party to this agreement, we conclude that the agreement was not authorized by the Public Employees Relation Act and is therefore void. The decree is reversed, and appellee is enjoined from proceeding to arbitration under the purported collective bargaining agreement. Each party pay own costs.

EAGEN, J., did not participate in the consideration or decision of this case.

POMEROY, J., joined the opinion of the Court and filed a concurring opinion.

POMEROY, Justice (concurring).

I have no disagreement with the court's opinion, and join in it. I do so, however, because, as noted in footnote 5 of the opinion, ante at 458, neither party has questioned the propriety of presenting the question of who is the employer to the courts without first obtaining a determination on that point by the Pennsylvania Labor Re-

lations Board in the certification proceedings. In *Hartshorn et al. v. Allegheny County et al.*, 460 Pa. 560, 333 A.2d 914 (1975), I expressed the opinion that in light of the legislative scheme of the Public Employer Relations Act.[1] ("Act 195"), and other considerations, including the doctrine of primary jurisdiction, the determination of who is a "public" employee should be made in the first instance by the Board. *Hartshorn v. Allegheny County*, supra, 460 Pa. at 560, 333 A.2d 914 (dissenting opinion of Pomeroy, J.). The same considerations as were there expressed are equally applicable here, where one of the basic questions is who is the public employer. That this is the proper procedure is clearly indicated by § 604 of Act 195. It provides: "The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof . . ." It is to be noted, moreover, that the judicial proceedings in *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974) came only *after* the Board had acted. This in my view, was the proper procedural sequence.

---

1. Act of June 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101 (Supp. 1974).