American Federation of State, County and Municipal Employees, District Council 84, AFL-CIO, by Guardian ad Litem, Vincent O'Brien, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee.

Argued October 6, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, ROGERS, BLATT and WILLIAMS, JR.

*Theodore M. Lieverman, Kirschner, Walters & Willig,* for appellant.

*Anthony C. Busillo, III,* Counsel, with him *James L. Crawford,* Chief Counsel, for appellee.

*Thomas H. M. Hough,* Assistant County Solicitor, with him *James H. McClean,* County Solicitor, for intervenor, County of Allegheny.

OPINION BY JUDGE ROGERS, November 23, 1981:

We have before us the appeal of the American Federation of State, County and Municipal Employees, District Council 84, AFL-CIO (Union), from a final order of the Pennsylvania Labor Relations Board (PLRB), dismissing the Union's exceptions to the PLRB's decision declining to issue a complaint charging that the Commissioners of Allegheny County had engaged in unfair labor practices.[1]

---

[1] The Union's appeal was properly taken to the Court of Common Pleas of Allegheny County. After the judges of that Court recused themselves, the Supreme Court of Pennsylvania took plenary jurisdiction of the appeal and transferred it to this Court for disposition.

The Union is the exclusive representative of two bargaining units of public employees whose members are court-appointed and court-related employees.[2] By letter dated October 31, 1980, Thomas H. M. Hough, counsel for the County Commissioners, set forth the position of the Commissioners with regard to the permissible scope of bargaining between the Commissioners and the Union in the light of the Supreme Court's decision in *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978). Mr. Hough's letter, after specifying a long list of topics concerning which the Commissioners are willing to negotiate, continues as follows:

> 6. Article VIII—Scheduling
> Article IX—Seniority
> Article X—Holidays
> Article XI—Vacations
> Article XII—Sick Leave
> Article XIII—Funeral Leave
> Article XVIII—Discipline
> Article XIX—Jury Duty
> Article XXV—Shift Differential
> Article XXVI—Meal Periods & Break Periods
> Article XXIX—Miscellaneous

All of these sections of your proposed agreement in all substantive aspects exclusively concern the appointment, termination and/or the supervision of employees within the bargaining unit. These articles relate to purely administra-

---

[2] The respondent's brief defines these terms as follows: " 'Court-appointed employes' include those employes who are hired, fired and directed by a court of common pleas and 'court-related employes' refers to employes who are involved with and necessary to the functioning of the courts who are not hired, fired and directed by the courts but rather by other elected county officials in county row offices. . . ."

tive subjects from which the Commissioners are precluded from bargaining.

. . . .

8. Article XX—Union Security

As noted above, it is within the power of the County Commissioners to negotiate a clause providing for a check-off of dues. However, it is beyond the authority of the Commissioners to terminate the employees in this unit and, therefore, the Commissioners cannot negotiate a provision which provides in any way for discharge for failure to pay dues and assessments while a union member. This limitation makes impossible a maintenance of membership clause.

9. Article XII—Compensation
   Article XXII—Insurance benefits
   Article XXIV—Mileage Reimbursement
   Article XXVIII—Term of Agreement

As noted above, all of these subjects are within the authority of the County Commissioners to bargain and the Commissioners are prepared to negotiate and bargain over all of these subjects.

On receipt of this letter, the Union filed their Charge of Unfair Practices with the PLRB contending that the letter was a "refus[al] to bargain collectively in good faith" as required by Section 1201(a)(5) of the Public Employe Relations Act (PERA).[3] The PLRB, without receiving evidence or entertaining argument, "advised [the Union] that no complaint will issue on the charge. . . . The specification of charges does not set forth a cause of action cognizable before the Board." The Union excepted to this determination on the grounds that an unfair labor practice had clearly been charged and that

---

[3] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §1101.1201 (a)(5).

by its dismissal letter of December 18, 1980, the Board has decided a case with major policy significance, in a manner contrary to the explicit direction of the Pennsylvania Supreme Court, without any opportunity to Charging Party to present evidence or legal argument in this manner [sic].

After oral argument and the submission of legal memoranda, the PLRB dismissed the Union's exceptions holding that the Commissioners' stated position with regard to the permissible scope of bargaining was consistent with PERA and the applicable statutory and decisional authorities.

The mechanics by which court employees are to exercise their statutory right to collectively bargain has been the focus, in recent years, of both judicial and legislative concern. Following the enactment of PERA in 1970 and prior to 1974 it was the practice of the PLRB to certify bargaining units consisting of court employees and to designate the county commissioners as the public employer with which the units were to bargain. This practice was held to be unlawful in *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974) (*Sweet I*) on the ground that in addition to the Commissioners the Judges of the Courts of Common Pleas "are at least *an* employer of *some* of the employes included in the bargaining unit comprised of court-related employes." (Emphasis in the original.) *Id.* at 462, 322 A.2d at 365. The Court additionally emphasized the inherent right and power of the judiciary, as a co-equal branch of our tripartite government, to do all things necessary for the administration of justice including the power to select and appoint "persons whose services may be required in judicial proceedings or who may be required to act as the assistants of the judges in the performance of their judicial functions." *Id.* at 463, 322 A.2d

at 365. In *Costigan v. Local 1696, American Federation of State, County and Municipal Employees*, 462 Pa. 425, 341 A.2d 456 (1975) a similar relationship of joint employment was found to exist between elected row officials[4] and their employees and it was held that the elected Register of Wills of the City of Philadelphia, like other elected row officials and judges, has the "exclusive power to hire, fire, promote, and direct the work of [their] employes." *Id.* at 434, 341 A.2d at 461.

In 1976 Section 1620 of The County Code[5] was amended to provide in pertinent part:

> that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.

The Supreme Court dealt with the effect of the amendment in *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978) holding that the legislative judgment to place the responsibility for bargaining on the commissioners should apply to all judicial districts in the Commonwealth and, substantively with regard to judges, that

---

[4] "Row officials" include the county Sheriff, Register of Wills, Prothonotary, Clerk of Courts, Clerk of Orphans' Court, etc.

[5] Act of June 29, 1976, P.L. 460 §1, *as amended*, 16 P.S. §1620.

Petitioners argue that this result hinders their ability to administer their courts. To the contrary, most of those matters properly within the scope of mandatory bargaining (citation omitted), concern wages and other financial terms of employment, which do not affect judges' authority over the essential areas of hiring, discharging, and supervising of court personnel, and do not hinder the ability of courts to administer justice.

*Id.* at 438, 388 A.2d at 735.

*Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978), decided the same day as *Ellenbogen,* expressly circumscribed the authority of the County Commissioners to negotiate contracts of employment with the employes of judges and row officials. The Court there wrote:

[S]o long as judges retain authority to select, discharge, and supervise court personnel, the independence of the judiciary remains unimpaired. These crucial areas of judicial authority are not infringed by collective bargaining, which here will resolve matters involving wages and other financial terms of employment.

*Id.* at 447, 388 A.2d 739. *See also Beckert v. American Federation of State, County and Municipal Employees,* 56 Pa. Commonwealth Ct. 572, 425 A.2d 859 (1981).

On the basis of these authorities we agree with the PLRB that the Commissioners' letter, to the extent that it simply evinces an unwillingness to negotiate provisions of a collective bargaining agreement which, if given effect, would infringe upon the exclusive authority of the judges to select, discharge, and supervise their employees, is not an unfair labor practice. However, the letter does more than express this ab-

stract proposition. It contains, as we have said, a long list of topics which will and will not be placed on the negotiating table. Implicit in the union's unfair labor practice charge is the contention that the Commissioners have refused to bargain on subjects within their authority; that is, matters other than the selection, discharge, and supervision of court personnel. The PLRB's ruling rejects this contention. We are asked to resolve this issue. We find ourselves unable to do this because the Commissioners' letter which is the only thing of record is not by its terms intended to be an integrated document but, instead, is intended to respond by article headings to a proposed collective bargaining agreement the terms of which have not been included in the record certified to us and, it would seem, were not considered by the PLRB.

It is, for example, impossible for us to review the PLRB's determination that "Article IX—Seniority," "Article X—Holidays" and "Article XI—Vacations" were properly excluded from bargaining by the Commissioners when we do not know what terms concerning the seniority of employees, and their holidays and vacations have been proposed. A provision declaring no more than the number of annual paid holidays might well be within the contractual authority of the Commissioners as sufficiently indistinguishable from other permissible terms involving the wages and fringe benefits of employment. In contrast, a provision declaring to be workless holidays certain specified dates, including dates during which the judges might desire to conduct judicial business, might well be without the Commissioners' authority. In the absence of the proposed agreement referred to in the Commissioners' letter it cannot be determined whether the Holiday provision there excluded from bargaining is more like the former or the latter hypothetical provision above described. The same considerations would

apply in some degree to each of the topics appearing under item 6 of the Commissioners' letter.[6]

In sum, the Commissioners having asserted (in item 6) that particular sections "of [the Union's] proposed agreement in all substantive aspects exclusively concern the appointment, termination and/or the supervision of employees . . . ," we cannot review the PLRB's determination not to issue a complaint without knowing what these "substantive aspects" were.

Accordingly, we enter the following

ORDER

AND Now, this 23rd day of November, 1981, the order of the Pennsylvania Labor Relations Board is vacated and the record is remanded for further proceedings, including an evidentiary hearing at which at least the proposed collective bargaining agreement herein discussed is admitted into evidence, and an order founded on the full text of the proposed agreement.

---

[6] See especially "Article XXIX—Miscellaneous."