Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellant *v.* Michael A. Della Vecchia, Recorder of Deeds of Allegheny County and The County of Allegheny, Appellees.

Argued March 13, 1985, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*John B. Neurohr,* with him, *James L. Crawford* and *Kathryn Speaker McNett,* for appellant.

*Stanley B. Lederman,* for appellee, Michael A. Della Vecchia, Recorder of Deeds of Allegheny County.

*Thomas H. M. Hough,* Assistant County Solicitor, with him, *James H. McLean,* County Solicitor, for appellee, County of Allegheny.

OPINION BY JUDGE PALLADINO, June 26, 1985:

The Pennsylvania Labor Relations Board (PLRB) appeals from an order of the Allegheny County Court of Common Pleas (court of common pleas) reversing an order of the PLRB which concluded that the Allegheny County Recorder of Deeds (Recorder) committed an unfair practice in violation of Sections 1201(a)

(1) and (5) of the Public Employe Relations Act (PERA)[1] by refusing to submit an employment dispute to binding arbitration pursuant to the terms of a Memorandum of Understanding (memorandum or agreement) between the Recorder and the Service Employees International Union, Local 585 (Union).[2]

The agreement between the Recorder and the Union purports to cover the noneconomic aspects of their employment relationship.[3] Article XIV of the agreement provides that discharge or suspension of an employee for a period in excess of thirty (30) days may be referred to final and binding arbitration by the Union, wherein the issue before the arbitrator is to be whether the Recorder had just cause for the action.

In early 1982, the Union, pursuant to Article XIV of the memorandum, requested arbitration of grievances it had filed concerning the Recorder's alleged termination of three Union employees. The Solicitor for the Recorder refused the Union's request for arbitration stating that inasmuch as the employees had been laid-off rather than terminated, Article XIV was inapplicable. Thereafter, the Union requested arbitration of the same grievance pursuant to its agreement with the County. The County also refused to proceed

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.1201 (a)(1) and (5).

[2] The Allegheny County Controller and Treasurer are also parties to this agreement.

[3] The Union has also entered into a separate agreement with the County which, in its recognition clause, states in pertinent part:

The County hereby recognizes the Union as the sole and exclusive bargaining representative of the unit employees with respect to such terms and conditions of employment exclusively within the control of the County Commissioners and excluding those terms and conditions of employment which might effect the authority of the Controller Recorder of Deeds and Treasurer to hire, terminate and supervise unit employees.

to arbitration stating that the issue of the alleged terminations was noneconomic and should be pursued under the agreement with the Recorder.

The Union then filed charges of unfair practices against both the Recorder and the County Commissioners of Allegheny County (County Commissioners) alleging that each had committed unfair practices in violation of Sections 1201(a)(1) and (5) of PERA by refusing to process its grievances to arbitration.

The PLRB consolidated the two complaints for hearing, after which the hearing examiner issued a proposed decision and order concluding that the Recorder is a "public employer" within the meaning of Section 301(1) of PERA[4] and that the Recorder committed unfair practices in violation of Sections 1201 (a)(1) and (5) of PERA by refusing to process the Union's grievances to arbitration. In the same order, the hearing examiner dismissed the charge against the County Commissioners. The PLRB then issued a final order dismissing the Recorder's exceptions to the hearing examiner's proposed decision and order and affirming it.

The court of common pleas sustained the Recorder's appeal of the PLRB's final order concluding that the Recorder is not a public employer under PERA and that because the County Commissioners are not a party to the memorandum, it cannot be considered a valid collective bargaining agreement.

Thus, the issue presented to this Court is whether an elected county row officer, having agreed to limit his authority to discharge his employees by agreement to arbitrate in a memorandum of understanding, can avoid that agreement to arbitrate by asserting his incapacity to enter into the memorandum of understanding in the first instance.

---

[4] 43 P.S. §1101.301(1).

Crucial to the resolution of this issue is an understanding of employer-employee relations in county government both prior and subsequent to the Legislature's amendment of Section 1620 of the County Code (Act 115).[5] Prior to the enactment of Act 115, the leading cases regarding which entity or entities are "public employers" for purposes of collective bargaining under PERA were *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974) *(Sweet I)* and *Costigan v. Philadelphia Finance Department Employees Local 696,* 462 Pa. 425, 341 A.2d 456 (1975). In *Sweet I,* our Supreme Court held that in addition to the county commissioners, the judges of the court of common pleas "are at least *an* employer of *some* of the employes included in the bargaining unit comprised of court-related employes." *Id.* at 462, 322 A.2d at 365 (emphasis in original). And in *Costigan,* the Court enjoined arbitration under a collective bargaining agreement executed by the Register of Wills of Philadelphia and the collective bargaining representative of its employees. The Court concluded that the Register of Wills and the City of Philadelphia were joint employers of those employees for purposes of PERA and thus voided the agreement because the City had a right to participate in the negotiations.

In 1976, the Legislature enacted Act 115 which provides in pertinent part:

[5] Act of August 9, 1955, P.L. 323, §1620, 16 P.S. §1620. Although The County Code is applicable only to counties of the third through eighth classes and Allegheny County is a second class county, our Supreme Court in *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978) extended the applicability of Act 115 to all judicial districts. The Court noted that "the mere fact that the Legislature had occasion to amend only The County Code does not demonstrate that it intended to deny judicial districts in other counties the benefits of its desirable principle." *Id.* at 437, 388 A.2d at 734. Thus, Act 115 is likewise applicable to elected row officers in all counties.

[T]hat with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights to such employes as may be vested in the judges or other county offices.

Our Supreme Court addressed the impact of Act 115 upon PERA and employer-employee relations in county government in its *Sweet II* decisions.[6] In *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), the Court concluded that Act 115 designated the county commissioners as the managerial representative of the judges in collective bargaining and representation matters under PERA. The Court recognized that in Act 115, the Legislature expressly indicated for the first time that a particular entity could be a "public employer" for purposes of determining the scope of PERA, but that that entity would not necessarily represent management at the bargaining table or in representation proceedings. The decisions in *Sweet I* and *Costigan* were based on "the assumption that the Legislature viewed those exercising

---

[6] *Sweet II* refers to the following companion cases: *Ellenbogen; Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978) ; *Sweet v. Pennsylvania Labor Relations Board*, 479 Pa. 449, 388 A.2d 740 (1978) ; *Board of Judges v. Bucks County Commissioners*, 479 Pa. 457, 388 A.2d 744 (1978) ; and *Board of Judges v. Bucks County Commissioners*, 479 Pa. 455, 388 A.2d 743 (1978).

some control over employment of employees as entitled to participate in bargaining and representation proceedings." *Ellenbogen,* 479 Pa. at 434, n. 11, 388 A.2d at 733, n. 11. The enactment of Act 115 altered this statutory scheme by designating the county commissioners as *the* managerial representative.

On the same day as the *Ellenbogen* decision, our Supreme Court in *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978) expressly concluded that the Court of Common Pleas of Philadelphia County is the "public employer" of court reporters, thus those employees are entitled to the rights of organizing and bargaining created by PERA.[7] That the Court in *Bradley* recognized the distinction between who is the public employer and who would *represent* management is further evidenced by its conclusion that inasmuch as the latter issue was not before it, it would not decide whether the judges were to sit as the managerial representative in bargaining and representational proceedings.[8]

In recognizing the distinction between public employer and managerial representative, the Court left intact its pre-Act 115 determination in *Sweet I* and *Costigan* that the judges and row officers possess powers of hiring, firing and supervising that make them at least *an* employer of their employees within the meaning of PERA. Indeed, Act 115, by its very terms, recognizes that the judges and the other county officers retain these powers. The effect of Act 115

---

[7] The Court in *Bradley* held that the PLRB's authority to conduct representation elections and certify bargaining units of court-appointed employees is constitutional.

[8] The Court addressed this issue in the *Bucks County* cases (see footnote 3) wherein the Court concluded that the county commissioners, and not the judges, are to represent management in collective bargaining with court-related and court-appointed employees.

therefore was not to change employer status, but rather to designate a managerial representative for purposes of collective bargaining. Thus, the court of common pleas erred in concluding that the Recorder is not a "public employer" under PERA.[9]

In addition to designating the county commissioners as the managerial representative with the sole power to bargain on behalf of the judges and row officers, Act 115 expressly restricted their authority to negotiate to those matters involving wages and other financial terms of employment. The Court in *Ellenbogen* maintained that designating the county commissioners as the managerial representative would not "hinder the judges' ability to administer their courts ... [as] ... most of those matters properly within the scope of mandatory bargaining concern wages and other financial terms of employment, which do not affect judges' authority over the essential areas of hiring, discharging and supervising the court personnel. ..." *Id.* at 438, 388 A.2d at 735. And in *Bradley* the Court stated: "[S]o long as judges retain the authority to select, discharge and supervise court personnel the independence of the judiciary remains unimpaired These crucial areas of judicial authority are not infringed by collective bargaining, which here will resolve matters involving wages and other financial

---

[9] To conclude that a county row officer is not a public employer would, for example, deny to his employees the protection afforded in Section 1201 of PERA, 43 P.S. §1101.1201, against discrimination by an employer for organizing. Unlike the situation with judges, whose discharge of a judicial employee would not be the subject of unfair practice proceedings before the PLRB because such would constitute an unconstitutional encroachment on the powers of the judiciary, *Beckert v. AFSCME*, 56 Pa. Commonwealth Ct. 572, 425 A.2d 859 (1981), *aff'd per curiam*, 501 Pa. 70, 459 A.2d 756 (1983) the PLRB's assertion of jurisdiction, in an unfair practice context, over a row officer's firing of one of his employees would be appropriate.

terms of employment." *Id.* at 447, 388 A.2d at 739. The commissioners therefore have authority to bargain over *only* those matters within their control and not over matters that affect the rights of either the judges or row officers to hire, fire or supervise their employees. *Cf. Eshelman v. Commissioners of Berks County,* 62 Pa. Commonwealth Ct. 310, 436 A.2d 710 (1982); *County of Allegheny v. Allegheny Court Association of Professional Employees,* 67 Pa. Commonwealth Ct. 277, 446 A.2d 1370 (1982).

Turning now to the merits of the instant case, the court of common pleas in its decision concluded that because the County Commissioners are not parties to the agreement at issue it cannot constitute a collective bargaining agreement enforceable under PERA. The court reasoned that inasmuch as matters related to the discharging of employees, such as a decision to arbitrate those discharges, are matters subject to collective bargaining, only the County Commissioners, as the managerial representative, may negotiate regarding those matters. We disagree. The agreement herein is clearly reflective of the dichotomy of control established in *Sweet II* as it contains provisions related solely to the issues of hiring, firing and supervising employees. These are matters regarding which the County Commissioners *could not* effectively negotiate because these matters are not within their control.[10]

The crux of the instant dispute therefore is the fact that while perhaps not obligated to do so under Act 115,[11] the Recorder of Deeds nevertheless negotiated

[10] That both the County Commissioners and the Union recognized this is reflected in the recognition clause in their agreement. *See* footnote 3.

[11] Quaere whether in its enactment of Act 115 the Legislature intended to remove from the scope of collective bargaining those matters which are within the exclusive control of county row officers but yet historically have been considered negotiable under PERA. The Court in *Ellenbogen* recognized that among the interests

with the union representing his employees an agreement covering those matters within his exclusive control. Having done so, the Recorder cannot now repudiate that agreement by arguing his incapacity to enter into the agreement in the first instance. Our Supreme Court rejected this same argument in *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978).[12] Therein the Court stated:

served by the passage of Act 115 was to have those officials responsible for raising revenue make the decisions affecting its allocation. However, matters such as the just cause provision at issue here are clearly negotiable under PERA. *See* Section 701, 43 P.S. §1101.701; *Lincoln University v. Lincoln University Faculty Association*, 467 Pa. 112, 354 A.2d 576 (1976). Moreover, by requiring row officers to bargain over matters within their exclusive control which are negotiable, there would not be present the constitutional concerns as is the case with the judiciary and any infringement upon its authority to administer the courts. *See Bradley*. This issue need not be addressed in the instant case however, as the key factor here is that Act 115 *does not prohibit* a county row officer from bargaining over those matters within his exclusive control.

[12] In this case the City of Pittsburgh entered into an agreement with the Joint Committee which contained a grievance arbitration procedure. The Joint Committee brought an action against the City after the City refused to submit an allegedly unjust discharge to arbitration under the terms of the contract. The City based its refusal on the argument that it lacked the capacity to enter into the agreement containing a grievance arbitration clause since such a provision conflicted with the Civil Service Act, (53 P.S. §§23401-23664), *and* Section 703 of PERA, 43 P.S. 1101.703, prohibits implementation of a provision which conflicts with pre-existing legislation. Thus, the facts of the instant case are very similar to those in *Pittsburgh Joint Collective Bargaining Committee* as in both cases the employer refused to arbitrate a grievance based upon the argument that it lacked the capacity to agree because of pre-existing legislation. As the PLRB effectively notes in its brief however, the case against arbitration in *Pittsburgh Joint Collective Bargaining Committee* was even more compelling as in that case the employer based its refusal on a specific prohibition contained in Section 703 of PERA. In the instant case, neither Act 115 nor the *Sweet II* cases prohibit the Recorder from entering into an agreement.

> To permit an employer to enter into agreements and include terms such as grievance arbitration which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.

*Id.* at 74, 391 A.2d at 1322. Moreover, in *Scranton School Board v. Scranton Federation of Teachers,* 27 Pa. Commonwealth Ct. 152, 365 A.2d 1339 (1976), our Court held that once a public employer has entered into an agreement concerning matters of managerial prerogative regarding which there is no obligation to bargain, the employer will be bound.

Having therefore concluded that the Recorder is bound by the agreement to arbitrate, we must next address the Recorder's argument that the Union's grievance is not arbitrable. The Recorder contends that Article XIV, Section 3 of the agreement limits those issues which may be presented to the arbitrator and the issue of arbitrability is not one of those issues.[13] Our Supreme Court in *PLRB v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982) rejected this argument recognizing that the question of the scope of the grievance arbitration procedure is for the arbitrator in the first instance. Thus, the issue of whether the employees at issue were discharged, sus-

---

[13] Article XIV provides that in the cases of a suspension in excess of thirty (30) days or a discharge the dispute may be submitted to arbitration. The question then presented to the arbitrator would be whether the row officer had just cause to suspend or discharge. The Union argues that the employees at issue were discharged while the Recorder contends that the employees were laid-off and that therefore the grievance is not arbitrable.

246

pended or laid-off by the Recorder is for the arbitrator to decide.

Accordingly, the decision of the court of common pleas is reversed and the final order of the PLRB is reinstated.

ORDER

AND Now, June 26, 1985, the order of the Court of Common Pleas of Allegheny County dated February 17, 1984 is reversed and the final order of the Pennsylvania Labor Relations Board is reinstated.

President Judge CRUMLISH, JR. dissents.