Charles G. Sweet, Richard DiSalle, Alexander R. Curran, Thomas D. Gladden, Paul A. Simmons, Judges of the Court of Common Pleas of the 27th Judicial District, Appellants, *v.* Pennsylvania Labor Relations Board, County of Washington, Michael R. Flynn, Frank Jones and Edward Paluso, County Commissioners, Peter Elish, County Controller, and Service Employees International Union, AFL-CIO, Appellees.

Argued November 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*David S. Posner,* for appellants.

*Raymond W. Cromer,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, *Francis A. Zulli,* Assistant Attorney General, and *James L. Crawford,* Assistant Attorney General, for appellee, Pennsylvania Labor Relations Board.

*Robert D. Douglass,* with him *Oliver Hormell,* County Solicitor, and *Pierce & Douglass,* for appellee, Commissioners.

*Frank C. Roney,* for appellee, Controller.

*Louis B. Kushner,* for appellee, Union.

*Alexander Unkovic,* with him *Frederick J. Francis,* and, of counsel, *Meyer, Unkovic & Scott,* for amicus

curiae, Pennsylvania Conference of State Trial Judges and the Pennsylvania Bar Association.

OPINION BY PRESIDENT JUDGE BOWMAN, March 5, 1974:

This is an appeal from a final order of the Pennsylvania Labor Relations Board (PLRB) which concluded that Washington County, acting through its county commissioners, was the public employer of the court-related employees of that county within the meaning of the Public Employe Relations Act of July 23, 1970, P. L. 563, 43 P.S. §1101.101 et seq. The final order in question confirmed a prior nisi order of the PLRB of certification of an appropriate bargaining unit consisting of court-related employees and providing for a representative election as to such a unit.

This final order of the PLRB was handed down after the judges of the Court of Common Pleas of Washington County, having become aware of the proceedings before the PLRB, were heard in their assertion that they, or the court itself, were the public employer of such employees. However, the final order followed the previously ordered representative election, certification of a representative (Local 585, Service Employes International Union, AFL-CIO), and predated but a few days a labor contract entered into between the county and court-related employees through their representative; a practice we condemn and have uniformly stayed in similar cases within our jurisdiction where important issues involving interpretation of this new legislation are being tested by judicial review of PLRB action.

In this particular case, the precipitous actions of the PLRB, rather than promoting orderly and constructive relationships, are certain to create and have created discord and dispute in many collateral sub-

jects which this Court will not and cannot reach in disposing of the narrow issues raised in this appeal.

The appeal is before us on transfer from the Supreme Court of Pennsylvania which had assumed plenary jurisdiction because the appellants comprise the judges of the court of common pleas having jurisdiction over the appeal. *Pottsgrove School District v. PLRB,* 451 Pa. 404, 304 A. 2d 491 (1973). They properly disqualified themselves and the Supreme Court assumed jurisdiction.

Appellants, the Pennsylvania Bar Association and the Pennsylvania Conference of Trial Judges as amicus curiae, advance essentially two arguments. They initially contend that the PLRB erred as a matter of law in concluding that the County of Washington, acting through its county commissioners, is the public employer of the court-related employees in question. They assert that the judges of the Court of Common Pleas of Washington County are the public employer. Alternately, they argue that if the PLRB properly interpreted the statute in question then the statute is unconstitutional as it pertains to court-related employees on fundamental grounds of separation of powers.

Section 301 of the Act, 43 P.S. §1101.301, defines "public employer" to mean: ". . . the Commonwealth . . . its political subdivisions, including school districts and any officer, board, commission, agency, authority or other instrumentality thereof. . . ."

As pertinent here, the key phrase defines the public employer to be the "political subdivision" which is elsewhere statutorily defined to include county government. Section 1991, Statutory Construction Act of 1972, 1 Pa. S. §1991. Insofar as legislative intent and statutory construction are concerned, there can be no doubt that the County of Washington, acting through its county commissioners, is the public employer of

employees of that county within the meaning of the Act to the extent that the Act requires or authorizes a public employer to deal with employees of the county defined as public employees and then only within the scope of the Act.

Therefore, we are constrained to hold as a general proposition that the County of Washington is the public employer of employees of the county who are public employers within the meaning of the Act and such county employees include "court-related" employees who otherwise are public employees within the meaning of the Act.

Having so concluded, is the Act unconstitutional as it pertains to court-related employees?

As this Court recently stated in *Hetherington v. McHale,* 10 Pa. Commonwealth Ct. 501, 513, 311 A. 2d 162, 168 (1973), quoting from *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A. 2d 835, 840 (1963), " 'An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution.' " (Emphasis in original.) In enacting legislation, it is presumed that the legislature does not intend to violate the Constitution of the United States or of this Commonwealth and that the legislature does not intend an absurd result. This Court has a duty to construe a statute if at all possible so as not to render it unconstitutional. *In re Shelly,* 332 Pa. 358, 2 A. 2d 809 (1939).

With this principle in mind, does the Act as applicable to court-related employees so interfere with the proper function of the courts and the administration of justice as to constitute a legislative encroachment upon the judicial branch of our State government in violation of Article V, Section 1, of our Constitution establishing a unified judicial system as a separate and independent branch thereof?

On its face and by its provisions we do not think so. In so concluding, our view is consistent with and follows the teaching of two landmark decisions of our Supreme Court involving essentially the same constitutional issue. The earlier case *Leahey v. Farrell*, 362 Pa. 52, 59, 66 A. 2d 577, 580 (1949), involved the issue of whether or not the legislature has the power, through the establishment of County Salary Boards, to regulate the compensation of court stenographers, criers, and other court employees or whether such power rests inherently and exclusively in the Courts.

In holding that the Courts did not have exclusive power to regulate compensation the Supreme Court states: "In the present case there was no infringement upon judicial powers when the legislature, in the exercise of its power to regulate final affairs of the Commonwealth, set up a salary board and established an orderly method of fixing, inter alia, salaries of court employees. It became the duty of the court to comply first with the statutory provisions and to make known to the board its reasonable requirements. It is only when the board acts arbitrarily or capriciously and refuses or neglects to comply with the reasonable necessary requirements of the court, whereby the administration of justice may be impaired or destroyed, that under the inherent power of the court, orders like that now complained of may be enforced by mandamus."

In *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A. 2d 193 (1971), the Supreme Court was called upon to decide whether or not the Judges of the Court of Common Pleas of Philadelphia could compel the Mayor and City Council of Philadelphia to appropriate additional funds necessary for the administration of that court. The Supreme Court citing *Leahey, supra*, stated that if the court establishes that additional funds are reasonably necessary for the "efficient administration of justice" then the judiciary has the inherent

power to compel the legislative and executive branches of government to appropriate those funds.

Having so concluded, we here pointedly recognize and emphasize to the public employer of court-related employees that in exercising the powers and performing the duties of a public employer under the Act, contracts entered into with court-related employees through their representatives may not impede or otherwise interfere with the administration of justice nor the proper functioning of the courts anymore than legislative action itself may do so.

A relationship whereby the judiciary is subject within reason to third party decisions is not unique to Pennsylvania law as a reference to the County Salary Boards indicates. Act of August 9, 1955, P. L. 323, 16 P.S. §§1622, 1625. Under salary board procedures, the court, while outnumbered, and thus subject to the board's decisions retains the power to insure an efficient judicial system. *Leahey, supra.*

Such contracts must also stand constitutional muster for if the Act is constitutional because on its face it does not clearly, palpably and plainly encroach upon the judicial branch, there cannot be delegated to the executive branch of the government or the Commonwealth's political subdivisions, a power or authority which the legislative branch itself does not possess, and thereby abrogate a fundamental constitutional doctrine under our form of government.

We would also add that provisions of a contract entered into between the public employer and court-related employees may not include individual court-related employees who are not public employees within definition of public employee in the Act nor may the provision of any such contract abrogate or alter existing statutory law authorizing judges or courts to employ particular personnel or otherwise prescribe their powers and duties.

We recognize that some of what we here say goes beyond determination of the narrow issues before us in this appeal and thus properly characterized as dicta. However, we so speak because we are advised in the briefs filed in this appeal and are otherwise advised with respect to court-related employees of other counties that disputes and differences among the judiciary, the public employer and the court-related employees are growing, and at times threaten the proper administration of justice or the functioning of the courts, the very condition that neither the Act itself nor contracts negotiated thereunder may produce if the judiciary is to properly perform its functions independent of the other branches.

In conclusion, we also observe that as unification of judicial branch of government moves toward reality as mandated by the Constitution and becomes in fact truly unified under the general supervisory and administrative authority of the Supreme Court of Pennsylvania (Article V, Section 10), present concepts of the employer of court-related employees and the criteria by which such a determination is made must be reconsidered and will be reshaped and much we say today may be soon antiquated. Most court-related personnel of courts of common pleas of the several judicial districts, now employed and paid by counties, are already recognized as personnel of the unified judicial system or related staff under the Pennsylvania Rules of Judicial Administration adopted by the Supreme Court. Equally significant is the relative new program of State grants through appropriations by the legislature to the counties in support of the cost of judicial administration at the county level. Some seventeen million dollars has been distributed to the counties for this purpose out of 1973-74 legislatively appropriated funds. Who is the public employer of court-related

employees of the judicial system at the county level as measured by traditional criteria of determining who is an "employer" or as within the meaning of "public employer" under the Act may well soon have to be reexamined.

In the meantime, as to contracts already entered into between public employers and court-related public employees, the only reasonable and logical solution to disputes and differences arising thereunder between the judiciary and the contracting parties or one of them is to meet and discuss and hopefully resolve the same within the context of the principles herein set forth. Litigation of such disputes is the unattractive alternative. Similarly, as to such contracts yet to be negotiated or entered into, the failure of the contracting parties to meet and discuss such problems with the affected judiciary foreshadows unneeded litigation.

ORDER

Now, March 5, 1974, the order of the Pennsylvania Labor Relations Board from which the above appeal is taken is affirmed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Prior to the Public Employe Relations Act,[1] court-related employees were, with one major exception, under the control of the judges of our courts. The judges hired, fired, supervised, directed, and were in fact and law the employers of all court-related employees. Only as an example, I would invite attention to the statutory enactments recognizing the court to be the employer of certain court-related employees.[2]

---

[1] Act of July 23, 1970, P. L. 563, 43 P.S. §§1101.101 et seq.

[2] The following statutory enactments of Pennsylvania are indicative of that relationship:

The major exception resulted when the Legislature passed the Act of July 5, 1947, P. L. 1308, which created salary boards to fix the salaries and compensation of all county employees.[3] This was a traumatic departure from the previous practice under which the judges alone determined and fixed compensation for their employees, and so, understandably, the judiciary initially resisted the implementation of these sections of The County Code, with the result that *Leahy v. Farrell,* 362 Pa. 52, 66 A. 2d 577 (1949), was decided.

(a)   The Act of May 1, 1907, P. L. 135, §1, 17 P.S. §1801, empowers the judge to select and appoint a stenographer.

(b)   The Act of April 14, 1834, P. L. 333, §78, 17 P.S. §1861, empowers the court to appoint one or more criers, tipstaves or constables.

(c)   The Act of May 10, 1909, P. L. 495, §3, 19 P.S. §1083, authorizes the court to appoint a probation officer and assistants to perform such duties as the court shall direct.

(d)   The Act of July 7, 1919, P. L. 725, §1, 17 P.S. §1875, authorizes the court to employ and remove at its discretion interpreters for use in the court.

(e)   The Act of July 13, 1953, P. L. 431, §4, 62 P.S. §2043.34, authorizes the appointment of domestic relations officers and assistants by the court.

(f)   The Act of August 9, 1955, P. L. 323, §1965, as amended, 16 P.S. §1965, authorizes the court to appoint a law librarian.

The aforementioned statutes were not superseded, amended or repealed by the enactment of the Public Employe Relations Act which provides, in Section 703, 43 P.S. §1101.703: "The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters."

[3] Like provisions were included in The County Code, Act of August 9, 1955, P. L. 323, 16 P.S. §§101 et seq., now applicable. For specific provisions see Sections 1620 through 1625, 16 P.S. §§1620-1625.

In *Leahey* it was held that the Legislature had the power to regulate by statute, within reasonable limits, the compensation of court employees, even though prior thereto the power to fix the compensation of such employees had rested inherently in the courts. It was specifically recognized that, where no statutory provision existed, judges of courts had the power to appoint personnel, at a salary fixed by the court, to be paid by the county, subject to the single limitation that such appointment be reasonably necessary.

The *Leahey* court rested its decision, where a statute exists fixing salaries of court employees, on the desirability and need for each branch of government to cooperate with the other two branches and therefore placed a duty on the courts to comply initially with the statutory provisions. However, a meaningful caveat was pronounced when it was stated: "Should the legislature, or the county salary board, act arbitrarily or capriciously and fail or neglect to provide a sufficient number of court employes or for the payment of adequate salaries to them, whereby the efficient administration of justice is impaired or destroyed, the court possesses the inherent power to supply the deficiency." *Id.* at 58, 66 A. 2d at 580.

Therefore, even as to the matter of fixing compensation for court-related employees, the authorized action of the salary board must be reasonable and salaries adequate or the employing court has the inherent power to act.

Thus there was a settled situation as to court-related employees, with the county commissioners' only involvement being as members of salary boards, when the Public Employe Relations Act (Act) was passed in 1970. I cannot read that Act to mean that the county commissioners are now the public employer of court-related employees, with the judges' only connection being representation on the salary boards.

The very first section of the Act[4] is entitled "Public Policy" and my reading of it indicates a legislative intent, not to rearrange the relationship between existing employers and employees or to substitute and create in the public sector new employers for existing ones, but rather to (1) grant public employees the right to organize and choose freely their representatives, (2) require public employers to negotiate, bargain and thereafter to enter into written agreements, and (3) establish procedures to provide for the protection of the rights of the public employee, the public employer and the public at large.

With this declaration of policy in mind, I read Section 301(1) of the Act under consideration, 43 P.S. §1101.301(1), which defines "public employer" to mean "the Commonwealth . . . , its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof. . . ."

I agree with the majority that "political subdivision" is elsewhere statutorily defined to include county government. Section 1991, Statutory Construction Act of 1972, 1 Pa. S. §1991. Therefore, I have no problem concluding that the County of Washington is by definition a "public employer" under Section 301(1) of the Act.

However, I hasten to add that the County of Washington, acting through its salary board, meets the test of public employer for one, and only one, of the matters subject to bargaining under Section 701 of the Act.[5] Section 701 requires good faith collective bargaining with respect to wages, hours and other terms and conditions of employment. Only wages fall within the province of the salary board by virtue of the rele-

---

[4] Section 101 of the Act, 43 P.S. §1101.101.

[5] 43 P.S. §1101.701.

vant provisions of The County Code[6] and *Leahey v. Farrell, supra.* Therefore, I am drawn to the conclusion that the County of Washington, acting through its salary board, is the public employer of the court-related employees and responsible for bargaining collectively, as required by Section 701 of the Act, on the matter of wages only.

Who then meets the definitional test of public employer for collective bargaining on hours and the other terms and conditions of employment? Let us again examine Section 301(1) which defines "public employer" to mean "the Commonwealth . . . , its political subdivisions including school districts *and* any officer, board, commission, agency, authority, *or other instrumentality thereof. . . .*" (Emphasis supplied.)

I read and understand this definition to mean that there are three distinct categories of public employers: First, there is the Commonwealth; second, there are political subdivisions of the Commonwealth, including school districts; and third, there is any officer, board, commission, agency, authority, or other instrumentality thereof.

Let us focus our attention on the last three words of the definition. The word "thereof," I contend, refers to "Commonwealth." If this be so, I have no hesitation in concluding that each judicial district is an instrumentality of the Commonwealth.[7] The 27th Judicial District is a juristic entity, an integral part of the judicial branch of government of the Commonwealth of Pennsylvania, and as such is an instrumentality of

---

[6] Note 3 *supra.*

[7] The Act of April 9, 1874, P. L. 54, and subsequent acts, culminating in the Act of January 8, 1952, P. L. (1951) 1844, and amendments thereto (Section 1, 17 P.S. §784), designate the several judicial districts of the Commonwealth, as required by the Constitution. *See* Art. V, §11, Sched., §27, of the Pennsylvania Constitution.

the Commonwealth. The word "instrumentality," with respect to a state, contemplates an authority to which the state delegates governmental power for performance of a state function. Therefore, it is the 27th Judicial District (Washington County), acting through its Board of Judges, that is the public employer of the court-related employees and responsible for bargaining collectively, as required by Section 701 of the Act, on all matters other than wages.

Not only does this meet the definition of Section 301(1), but it retains the relationship between the courts, salary boards, and court-related employees that has existed ever since *Leahey v. Farrell, supra.*

I refrain from commenting upon the unfortunate and foreseeable consequences that will surely flow from a determination that the county commissioners, not the judges, are the public employer of court-related employees. Suffice it to say that the *obiter dicta* concern expressed in the last half of the majority opinion is not imaginary but real.

I respectfully conclude that our decision today places the judiciary and the executive branch of government at the county level on a foreseeable collision course.

If I shared the opinion of the majority that the public employer here is the County of Washington, acting through its County Commissioners, then I would find the Act unconstitutional as it pertains to court-related employees because of its encroachment upon the inherent power of the judiciary to preside over its courtrooms and control court-related employees. *See* Article V of the Pennsylvania Constitution and *Carroll v. Tate,* 442 Pa. 45, 274 A. 2d 193 (1971). It must remain a basic precept of our constitutional form of government that the judiciary is an independent and coequal branch of government.

I would reverse the order of the Pennsylvania Labor Relations Board and remand this case for further proceedings not inconsistent herewith.

Judges CRUMLISH, JR. and KRAMER join in this dissent.