## Barkley v. Lawrence County

492

*David H. Acker,* for plaintiff.
*John W. Hodge, Charles W. Garbett,* for defendants.

CAIAZZA, *J.,* September 30, 1982—In September, 1972, Winifred Barkley commenced her employment with the County of Lawrence. Thereafter, on July 1, 1979, she was hired by the district attorney, Donald Williams, as an assistant county detective; formerly, she had worked in the office of the public defender of Lawrence County. The relevant negotiated agreement states that in all cases of promotions, demotions, transfers, shift scheduling, and filing of vacancies, or new positions, seniority shall be the primary factor.

It is undisputed here that the position of assistant county detective was not posted for bidding at the time Winifred Barkley was hired by the district attorney; likewise, it is undisputed that the negotiated labor agreement between the County of Lawrence and the Laborer's District Counsel of Western Pennsylvania, Local Union 964, which is the bar-

gaining agent for certain employees of the Lawrence County Courthouse, does not expressly require that the position of assistant county detective be placed for bid before the job is awarded. However, it appears that although the requirement of a posted bid was not reduced to the written negotiated contract, it has been discussed during labor negotiations; and, through custom, has become an accepted practice within each individual office, separate and apart from any other office, with seniority being the criteria upon which the job was awarded. Again, seniority was practiced in each individual office separate and apart from each and every other pertinent office, again, simply by custom. Here, there apparently was another employee in the district's attorney's office who expressed a desire to bid on the position of assistant county detective.

On October 2, 1979, Lawrence County Commissioner, John A. Meehan, Jr., who was then chairman of the board of commissioners, forwarded a letter to plaintiff, informing her that she was not to work as the assistant county detective because she was hired directly by the district attorney in violation of the labor agreement and since the job was not placed for bid and awarded pursuant to the seniority provisions of the negotiated contract. Contrarily, the district attorney took the position that he had the power, by law, to appoint the assistant county detective. However, Winified Barkley continued to work in the position of the assistant county detective until October 18, 1979. On February 20, 1980, she tendered her formal resignation from the position of assistant county detective; she never received any compensation for the services which she rendered for the County of Lawrence.

By virtue of the power vested in him by the Act of July 28, 1953, P.L. 723, 16 P.S. §4440, the district

attorney has the right to appoint and control assistant county detectives. The detectives receive a salary fixed by the county board and "[S]hall be paid out of the treasury of the county on a *certificate issued by the District Attorney* directed to the controller of the County." (Emphasis added.) See 16 P.S. §4440(c).

Pennsylvania courts have maintained that the District Attorney has the power to appoint and remove county detectives. In Hartshorn, et al v. Allegheny County, et al., 9 Pa. Commw. 132, 304 A.2d 716 (1973), appellees were appointed and served as county detectives for Allegheny County.[1] There, the county detectives notified the Allegheny County Commissioners of their desire to engage in collective bargaining as provided in Act III.[2] The county ignored the request and the defendant-appellees filed a complaint in mandamus seeking to compel the appellants to arbitrate. The county countered by stating that the application of Act III to the county detectives would divest the district attorney of control of his staff. The court held that control of the county detectives is vested in the district attorney pursuant to the authority derived from 16 P.S. §4440(b) and the negotiated contract can only require the district attorney to implement charges involving the terms and conditions of their employment.

Likewise, the court in Wood v. Rubino, 24 Chester Co. Rep. 250 (1976) recognized the district attorney's power to appoint assistant detectives. "[M]any elected county office holders . . . have appointment and personnel powers that are fixed by

---

1. This appointment was effective by virtue of the power afforded to the district attorney in 16 P.S. §4440, et seq.
2. The Act of July 24, 1968, P.L. 247 §I, 43 P.S. §217.1.

statute and past judicial decision; e.g., the district attorney . . . those officials clearly have a right to be heard on matters involving their own offices and employees." Id at 251.

In Fischer v. Rzymek, 15 Pa. Commw. 105, 324 A.2d 836 (1974), Judge Rodgers considered the question as to whether the Public Employee Relations Act, Act 170, July 23, P.L. 563, would permit the inclusion of provisions in a labor contract which were either inconsistent or violative of the provisions of other existing statutes.

There, the district attorney contended that the contract provisions of the negotiated agreement were contrary and in derogation of the powers vested in him by the Act of 1955, August 9, P.L. 323, §1440, 16 P.S. 1440. Interestingly, Article XII, B and C provided for the posting and bidding by employees for vacant positions and the filling of such vacancies by a senior qualified employee. Also, plaintiffs had been assured by one or more of the county commissioners that they would be consulted during the negotiations for a contract regarding any provision that would affect the employees of their respective offices.

In Fischer, supra, the court held that the Public Employee Relations' Act, supra, does not permit the inclusion of provisions in a labor contract which are inconsistent with or violative of an existing statute. Also, the court held that the plaintiffs had sufficiently met their burden for the issuance of a preliminary injunction in that they were employers who may not be excluded from negotiating a new contract with respect to the employees of their offices. In so holding, the court in Fischer cited Sweet v. Pennsylvania Labor Relations Board, 457 Pa. 456, 322 A.2d 362 (1974), which was filed July 16, 1974. The Fischer case was argued on June 3, 1974, and

the retraining order was issued on August 6, 1974.

In Sweet v. PLRB, (Sweet I), 12 Pa. Commw. 358, 316 A.2d 665 (1974), certain judges appealed a final order involving the question of who was the "employer" under Act 195 of the employees in the separate county offices, including the office of the district attorney. The court held that the judges were public employers of court-related employees and in dicta said, "[N]or may the provision of any such contract abrogate or alter existing statutory law authorizing judges or courts to employ particular personnel or otherwise prescribe their powers and duties." Id at 365. The Pennsylvania Supreme Court reversed the Commonwealth's Court decision in Sweet v. PLRB, 457 Pa. 456, 332 A.2d 362 (1974). There, the court said, "The duty to pay any employee's salary is often coincident with the status of employer but not solely determinative of that status," citing Rodgers v. Washington County Institute District, 349 Pa. 357, 37 A.2d 610 (1944), 322 A.2d at 635. Therefore, the court held the judges were, "[A]t least an employer of *some* of the employees included in the bargaining unit comprised of court-related employees." (Emphasis in original.) 322 A.2d 365 (1974). The court also maintained that the question of who employs a group of employees is not determined by Act 195, 43 P.S. §1101.101 et seq. 322 A.2d at 364.

In Costigan v. Philadelphia Finance Department Employees Local 696, 462 Pa. 4265, 341 A.2d 456 (1975), Costigan, who was the register of wills, brought the action to enjoin arbitration under a collective bargaining agreement which his predecessor, King, had entered into at a previous time. The agreement provided that no employees who were employed at the execution of the agreement would be terminated. The agreement was executed

on December 31, 1971. Costigan assumed office as register of wills on January 3, 1972. When assuming office, he discharged various employees. The court said, "In the instant case, no single entity controls all terms of employment relationship. The register of wills is conceded by all parties to have the exclusive power to hire, fire, promote, and direct the work of the employees." (Emphasis added.) Id at 434. The court also decided, relative to bargaining for a unit which included the employees in the office of the register of wills of Philadelphia County, that the register of wills was a "joint employer" with the City of Philadelphia, and that both should jointly negotiate the contract with the union.

Next, in Washington v. PLRB, 26 Pa. Commw. 315, 365 A.2d 519 (1976), several appeals from Pennsylvania Labor Relations Board (PLRB) decisions determining the identity of employers and employees for the purpose of the Public Employee Relations Act, 43 P.S. §1101.101 et seq., were consolidated on appeal, the court held that the county commissioners and judges of Washington County were joint employers. In dealing with Allegheny County's appeal, the court held that court and county commissioners were joint employers.

While the Washington case was pending, the legislature amended the County Code by enacting Act 115, P.L. 460, June 29, 1976, 16 P.S. §1620, thus providing the county commissioners with the sole power to represent judges of the court of common pleas, the county, and all elected or appointed county officers having any employment power over the affected employee in bargaining activities. However, the statute specifically stated that the "[E]xercise of such responsibilities by the county commissioners shall in *no way* affect the hiring, discharging and supervising rights and obligations with

respect to such employees as may be vested in judges or other county officers." (Emphasis added.) 16 P.S. §1620 (1976).

Subsequent to the enactment of Act 115, the case of Commonwealth v. PLRB, was decided; 479 Pa. 440, 388 A.2d 736 (1978). There, certain judges appealed a PLRB decision certifying the American Federation of State, County, and Municipal Employees as the exclusive bargaining agent for court reporters. The court determined that they were public employees and also commented on the 1976 amendment to 16 P.S. §1620 by stating that, "This Amendment authorizes county commissioners to act as the managerial representative in proceedings under Act 195 involving court personnel without *in any way interfering with the supervisory authority of the courts.*" (Emphasis added.) Id at 446 .

The Supreme Court of Pennsylvania then followed with its decision in Ellenbogen v. County of Allegheny, 479 Pa. 429, 388, A.2d 730 (1978), where certain common pleas judges sought a declaratory judgment identifying the managerial representative for purposes of collective bargaining and representation under the Public Relations Act, 43 P.S. §1101.101 et seq. (1970). The court held that the county commissioners were the exclusive managerial representatives because of the 1976 amendment to Act 115. The court also pointed out that the amendment does not detract from the judges' power to hire, remove, and supervise. The court opined, "This exclusive authority, however, does not diminish the right of judges to 'hire, discharge, and supervise' these employees." Id at 438.

Sweet v. PLRB, 479 Pa. 449, 388 A.2d 420 (1978), involved a similar issue as in Ellenbogen, supra. The court there also decided that the Washington County commissioners were the exclusive

managerial representative for collective bargaining purposes.

Lycoming County Prison Board v. Dept. of Labor and Industry, 45 Pa. Commw. 307, 405 A.2d 985 (1979), next appeared on the scene and involved the question as to whether the prison board was the public employer of certain prison employees. In 1975 the prison board was named the public employer when American Federation of State, County, and Municipal Employees (AFSCME) was certified as the bargaining agent for the prison employees. When an impasse in bargaining was reached, the matter was submitted to binding arbitration. Before the arbitration process resolved the impasse, the 1976 amendment to Act 115 was passed. As a result, the prison board moved to dissolve the arbitration because it was not the public employer. AFSCME then filed an unfair labor practice charge with the PLRB, which decided that the prison board was the public employer and had commited an unfair labor practice. The court stated that Costigan, supra, and Sweet 1, supra, have been laid to rest in peace and ruled that the county commissioners were the exclusive bargaining agent for the prison employees, regardless of otherwise existing employer-employee relationships between the prison board, prison guards and matrons.

One predominant theme appears to run its course through the line of cases summarized by this court; namely, that the law does not permit the inclusion of provisions in a labor contract which are inconsistent with or violative of a statute. Pursuant to the Act of August 9, 1955, P.L. 323 §1440, 16 P.S. 1440, "The district attorney may appoint one chief county detective, one assistant county detective, and such other county detectives as the salary board may authorize." Recognizing that the complex is-

sue of the identity of the actual employer which may exist in many instances, Act 115 was enacted which, in effect, gave the county commissioners the power and responsibility to represent many offices as the exclusive bargaining agent in labor negotiations. However, the statute specifically states that the exercise of that responsibility may in no way affect the hiring, discharging or supervisory rights of those employees. And the fact that the duty to pay an employee's salary is many times coincident with the status of employer, that fact alone is not dispositive of the issue. Rodgers v. Washington County Institution District, 349 Pa. 353, 37 A.2d 587 (1944). "The relation of employer and employee exists when a party has the right to select an employee, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done." McColligan v. Pennsylvania Railroad Co., 214 Pa. 229, 63 A.2d 792 (1906). See also Smalich v. Westfall, 440 Pa. 409, 269 A.2d 476 (1970).

Here, District Attorney Donald Williams was given the right to select an assistant county detective by virtue of the power vested in him by law. And, although the provisions of the negotiated labor contract states that in all cases of promotions, transfers, demotions, shift scheduling, and filling of vacancies, or new positions, seniority shall be the primary factor[3] such a provision cannot be violative of an existing statute. See Fischer v. Rzymek, supra. Consequently, Article XXV of the negotiated contract cannot violate the provisions of the Act of August 9, 1955, P.L. 323§1440, 16 P.S. §1440, by stripping the district attorney of the right to appoint an assist-

---

3. Article XXV of the negotiated labor contract.

ant county detective. Thus, the district attorney had the power to hire Winifred Barkley.

Also, an ancillary issue here is whether the negotiated labor agreement remained in force during the period in question.

The court in Appeal of Cumberland Valley School District, 435 Pa. 134, 394 A.2d 946 (1978) discussed the limitation of the employer's right to implement unilateral changes after the expiration of the collective bargaining agreement. There, it was held that unilateral changes in the terms and conditions of employment by the employer after the expiration date of the collective bargaining agreement would be disruptive of the labor peace which the Pennsylvania Employe Relations Act (PERA) seeks to foster in matters involving labor controversies in the Commonwealth. The court added that "The coercive effect of the unilateral [changes] is obvious. The bargaining authority of the [association] is seriously undermined." Appeal of Cumberland Valley, supra, 483 Pa. at 143, 394 A.2d at 951.

Consequently, the same result should be reached in this instance since it is imperative that the status quo be maintained during the period of time in which the employees continue to work; and, accordingly, the court holds that the labor agreement remained in force during the period here in question.

At this juncture, however, the court finds it necessary to raise an issue, sua sponte. The Act of July 23, 1970, P.L. 563, Article IX §903, 43 P.S. 1101.903 states as follows:

"Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite

board of arbitrators as the parties may agree. Any decision of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted:

(1) If the parties cannot voluntarily agree upon the selection of an arbitrator, the parties shall notify the Bureau of Mediation of their inability to do so. The Bureau of Mediation shall then submit to the parties the names of seven arbitrators. Each party shall alternately strike a name until one name remains. The public employer shall strike the first name. The person remaining shall be the arbitrator.

(2) The costs of arbitration shall be shared equally by the parties. Fees paid to arbitrators shall be based on a schedule established by the Bureau of Mediation."

In Hartshorn, supra, the appellants argued that the court should overrule its decision in Venneri v. County of Allegheny, 5 Pa. Commw. 105, 289 A.2d 523 (1972), where it was held that a determination of the status of any employee by the PERA is not a prerequisite to relief in mandamus under a state collective bargaining agreement. Also, in Sweet v. PLRB, supra, (Sweet I) and in the subsequent line of cases, the determination of who was the employer of a group of employees was discussed in each of the opinions, as well as who would be the bargaining agent; also, the limiting role of the bargaining agents were discussed at great length.

Thus, the threshold question at this point, is whether the subject matter of the issue presented to this court is arbitrable and thus controlled by the mandatory arbitration clause of Act 195, paragraph 930, cited elsewhere herein. A statement of the subject matter of the issue here is: whether the district attorney has the power to appoint an assistant county detective or whether the position of assistant

county detective must be given to the employee (a) then employed in the office of the district attorney, and who (b) bids on the job, and (c) has the most seniority.

To further focus upon the subject matter of the issue, the county has taken the position that the job must be placed for bid and awarded pursuant to seniority according to Article XXV of the negotiated contract. Plaintiff here asserts that she has the right to the job because of the authority given to the district attorney by law. The ultimate question, reduced to its lowest common denominator, is — who is the employer of an assistant county detective. As stated elsewhere herein, courts do have the authority to make that determination and have done so in this instance.

Consequently, even considering the provision that arbitration of disputes arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory, courts, nevertheless, have the power to make the determination of who is the employer of a group of employees, which issue does not fall within the arbitration clause. In that regard see Lincoln University v. Lincoln University Chapter, American Association of University Professors, 467 Pa. 112, 119, 354 A.2d 576, 580 (1976).

Here, the court has held elsewhere herein that the district attorney is the employer of assistant county detectives by virtue of the authority granted to him by virtue of the Act of July 28, 1953, P.L. 723, 16 P.S. §4440. Thus, the question — who is the employer is not controlled by the mandatory arbitration clause of Act 195.

The next issue proves more bothersome.

In view of the fact that grievances must be submitted to arbitration pursuant to the provision of Act 195, and in view of the fact that a grievance for

unpaid wages was filed here but not processed to its conclusion, can the court award money damages since the grievance procedure was not exhausted?

Here, plaintiff was not paid for her work, and because of that fact, filed a grievance; Robert Session, who is the business manager for Local 964 stated that Mrs. Barkley filed a grievance as to pay, and the grievance was forwarded to the chairman of the board of commissioners. Mr. Session stated that he was subsequently informed that Mrs. Barkley would be paid for her services. During his testimony, he said that copies of the checks which apparently were to be forwarded to plaintiff were shown to him.

In explaining the relevant procedure, Mr. Session stated that if a grievance cannot be resolved, it is forwarded to the Laborer's District Council, who arrange for the case to proceed to formal arbitration. There is no evidence before the court here that the case proceeded to the arbitration step of the grievance procedure.

Of some significance also is the fact that an employee of the district attorney's office, Carol Barbato, filed a grievance claiming that she should have been awarded the position of assistant county detective in that she was the senior qualified person who was employed in the district attorney's office. No resolution was apparently reached on that grievance.

Also, Mr. Session said that historically:

"[A]n employee does not move from department to department. If you have seniority — using the Prothonotary's Office if a bid — a job comes up and is put up for bid, the people in that department, in the Prothonotary's office bid it. If no one in that department wants the job, and no one bids that job, and that job is open, then they are free to hire whomever they want, but it goes through the bid-

ding process in that department. There never has been interchanging from department to department."

As stated elsewhere herein, no express condition is set forth in the negotiated contract relating to the movement of personnel from one department to another department. That practice is, again, a matter of custom and usage.

The law is clear that Pennsylvania labor policy requires public employee grievances which arise from the interpretation of collective bargaining agreements to be submitted to arbitration. Division 85, Amalgamated Transit Union v. Port Authority of Allegheny County, 62 Pa. Commw. 528, 437 A.2d 105 (1981).

Here, the union was placed in a compromising situation. One member, Carol Barbato, filed a grievance claiming that she should be awarded the job and another member, Winifred Barkley, was of the opinion that she was rightfully appointed to the position because of the authority given to the district attorney by law. And, the union, again, was in the unenviable position of being duty-bound to its two members.

A union, which is the exclusive bargaining representative of the employees in a bargaining unit, has a statutory duty to represent all of the employees, both in its collective bargaining with the employer and in its enforcement of the resulting collective bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 17 L.Ed.2d 842, 87 S.Ct. 903 (1967). Also, section 301 of the Labor Management Relations Act (19 USC §185) permits suits for breach of a collective bargaining contract regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the National Labor Relations Board.[4] And, although section 301 of the Labor

Management Relations Act permits suits in "the courts of the United States," the basic purpose of 29 USCS §185(a) is not to limit, but to expand the availability of forums for the enforcement of contracts made by labor organizations, and the purpose of conferring jurisdiction upon the federal courts was not to displace but was intended to supplement state court jurisdiction. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 7 L.Ed.2d 483, 82 S.Ct. 519 (1962). And, additionally, a breach of a union's statutory duty of fair representation to the members of a collective bargaining unit occurs only when the union's contract toward a member of the unit is arbitrary, discriminatory, or in bad faith. See Vaca v. Sipes, supra.

Here, plaintiff did not plead or prove by a preponderance of the evidence circumstances which excuse her duty to resort to the grievance procedure as established by the agreement, viz., the lack of fair union representation. Hubicki v. ACF Industries, Inc. et al, 484 F.2d 519 (3d Cir. 1973); cf. Lomax v. Armstrong Cork Co., 433 F.2d 1277, (5th Cir. 1970). The testimony relating to the grievance procedure was skimpy at best. There was no testimony presented by plaintiff which in any was described the activities of the union in pursuing the grievance. Consequently, the court is hard-pressed to hold that the union here acted arbitrarily, discriminatorily, or in bad faith. At most, the union faced a decision — that is; who was entitled to the position, Carol Barbato or Winifred Barkley. Also, plaintiff, Winifred Barkley, had no absolute right to force the union to process her grievance through the mechanisms established by the negotiated contract. In administrating the grievance and arbitration machinery, a union, must, in good faith, make decisions as to the merits of particular grievances.

However, the court here notes that judicial inquiry into the arbitrability of a grievance is limited to the determination of whether the parties entered into an agreement to arbitrate and whether the dispute falls within the arbitration clause. Carmichaels Area School District v. Carmichaels Area Education Association, 37 Pa. Commw. 141, 389 A.2d 1203 (1978); affirmed 487 Pa. 15, 407 A.2d 382 (1979).

Obviously, the first requirement is met — the parties have, in fact, entered into an agreement to arbitrate. Next, does the instant dispute fall within the provision of the arbitration clause?

Here, the arbitrator would confront two issues, the first of which would be — does seniority exist in each individual office separate and apart from any other office, as is the custom in Lawrence County. In an arbitration of a grievance by a public employee under a bargaining agreement, where the agreement contains no integration clause, an award sustaining an agreement based upon a past practice of the parties is within the limits of the law. See Ringgold Area School District v. Ringgold Education Association, PSEA/NEA, 489 Pa. 380, 414 A.2d 118 (1980). The past practice in Lawrence County is clear as suggested by the testimony of Mr. Session. This practice was obviously regarded as binding and controlling, though not reduced to writing. The contract did not prohibit that practice; thus, a decision related thereafter could have been afforded sustenance by an arbitrator, and his decision therein could be said to have been derived from the essence of the negotiated contract. See Leechburg Area School District v. Dale, et al., 492 Pa. 515, 424 A.2d 1309 (1981).

Next, to render a complete and total award, the arbitrator would have had to decide the status of the plaintiff herein as it related to Winifred Barkley;

that is, was she lawfully hired; and, stated different-
ly, would an arbitrator have jurisdiction to decide
the question of law as determined by this court as
stated elsewhere herein; viz; that the district attor-
ney had the power to hire Winifred Barkley.

If an arbitrator's interpretation of a negotiated
contract is reasonable, it must be upheld, even if a
different interpretation appears to be viable to a re-
viewing court. Community College of Beaver Coun-
ty v. Community College of Beaver County, Society
of the Faculty (PSEA/NEA), 473 Pa. 576, 375 A.2d
1267 (1977). Whether or not Winifred Barkley was
legally hired is an issue which cannot be deter-
mined from within the provision of the bargaining
agreement. However, that does not mean that an ar-
bitrator cannot make a determination of law and
then bottom his decision upon any such resolution.
If an arbitrator did not have the jurisdiction to de-
cide a question of law, then section 11(d) of the Act
of April 25, 1927, P.L. 381, as amended. (Arbitration
Act) 5 P.S. §171(d) would be meaningless. Section
11(d) of the Arbitration Act authorizes a court to
correct or modify an award "[W]here the award is
against the law, and is such that had it been a ver-
dict of the jury the court would have entered differ-
ent or other judgment not withstanding the ver-
dict." Consequently, courts can rectify mistakes of
law. Pennsylvania Turnpike Commission v. Smith,
350 Pa. 355, 359 39 A.2d 139, 141 (1944); see also
Pennsylvania Electric Co. v. Shannon, 377 Pa. 352,
105 A.2d 55 (1954); McDevitt v. McDevitt, 365 Pa.
18, 73 A.2d 394 (1950).

Thus, it is clear that an arbitrator is subject for re-
versal for making a mistake of law. However, if the
decision is premised upon a correct interpretation of
the law, the award must stand if it can be derived
from the essence of the contract. The totality, there-

fore, of the issues presented in the Winifred Barkley matter could legally have been decided by an arbitrator.

What becomes clear throughout this whold scenario is that the matter involving Winifred Barkley should have proceeded through the arbitration clause as provided by the negotiated contract. Her failure to exhause the grievance procedure places the court in a situation where it must express regret; but, the grievance machinery is positioned at the very essence of the system of industrial self-government. To invoke court aid is merely to invite a foreign forum into the proceeding. Industry should be governed by industry and, whenever possible, not by the courts.

The court, here, however, notes that this decision in no way should be interpreted as a determination as to whether a cause of action exists on behalf of the plaintiff under the provision of section 301 of the Labor Management Relations Act. (19 USC § 185).

Counts three and four of the complaints based upon quantum meruit (unjust enrichment) must also fail. Recovery of the reasonable value of services rendered made may be awarded only in the circumstances where there is no existing contract which sets the value of the services. See Schott v. Westinghouse Electric Corp., 436 Pa. 279, 259 A.2d 443 (1969); Murphy v. Haws & Burke, 235 Pa. Super. 484, 344 A.2d 543 (1975). Here, a contract clearly was in existence. Also, recovery on a quantum meruit basis is bottomed upon the existence of a contract calling for performance of services, but which leaves unspecified the compensation for such services. Belmont Industries Incorporation v. Bechel Corp. et al., 425 F. Supp. 524 (E.D., Pa. 1976).

510

Unfortunately, in many instances, and this case happens to be one of them, the litigants become encompassed within legal theories, contract rights, and a multitude of other differences which, unfortunately, detract from the main issue — that is; Winifred Barkley has not been paid for her work — and that is sad. Consequently, now that it has been determined that the district attorney had the right to hire Winifred Barkley, the court suggests, as an advisory matter, that the parties explore the possibility of processing her claim through the avenues of the grievance procedure within the provisions of the negotiated contract.

In that manner, perhaps this saga can be concluded satisfactorily and fairly for all parties.

Finally, the court notes that no facts were presented to sufficiently substantiate recovery against any of defendants personally named in this suit; nor was any legally recognized theory advanced on behalf of plaintiff upon which this court could bottom a recovery against any of individual defendants.