613 A.2d 155

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, STEAMFITTERS LOCAL 449, AFL–CIO, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided July 27, 1992.

412

Robert A. Eberle, for petitioner.

John B. Neurohr, for respondent.

Craig M. Brooks, for intervenor, University of Pittsburgh.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

SMITH, Judge.

The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Steamfitters Local 449, AFL–CIO (Local 449) petitions for review of the final order of the Pennsylvania Labor Relations Board (Board) dismissing an unfair labor practice charge filed against the University of Pittsburgh (University) which alleged a violation of Section 1201(a)(1) and (3) of the Public Employe Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a)(1), (3). Specifically, Local 449 alleged that the University terminated the employment of Michael Jadlowiec and Charles J. King because of their membership in and activities on behalf of Local 449.

■ On appeal to this Court, Local 449 questions whether the Board erred as a matter of law by concluding that the University and Bryan Mechanical Company (Bryan), with whom the University contracted for maintenance, repair, and installation of heating and air conditioning equipment throughout the University's physical plant, are joint employers of the steamfitters in question; and in the alternative, assuming that a joint employer relationship exists, whether the Board erred in concluding that it is without jurisdiction to consider the underlying merits of the charge of unfair labor practices.[1] For the following reasons, the Board's order is reversed.

1. Where an appeal of a Board determination is made directly to this Court, the scope of review is limited to a determination of whether there has been a constitutional violation or an error of law, and whether the findings of fact are supported by substantial evidence. *Harbaugh v. Pennsylvania Labor Relations Board,* 107 Pa.Commonwealth Ct. 406, 528 A.2d 1024 (1987).

## I

Local 449 represents a bargaining unit of approximately thirteen steamfitters, two of whom are foremen, working at the University's main campus in Pittsburgh and responsible for the maintenance, repair, and installation of heating and air conditioning equipment throughout the University's physical plant. The University has employed steamfitters and foremen represented by Local 449 since at least the 1950's, and prior to 1975, the University was signatory to a series of collective bargaining agreements with Local 449. In 1975, the University adopted the practice of contracting with various private contractors to obtain the work historically performed by Local 449 steamfitters and foremen, although the Local 449 steamfitters and foremen continued to work at the University. Since 1975, the University contracted with four private contractors, the last of which was Bryan, awarded the work in 1988. During this period, the steamfitters' and foremen's terms and conditions of employment did not change. Although the two foremen have control of the day-to-day activities of the steamfitter employees, the foremen were directly supervised by the University's manager of mechanical systems, Anthony La-Guardia.

Bryan is a member of the Mechanical Contractors' Association of Western Pennsylvania (MCA), and is a signatory to a collective bargaining agreement entered into between Local 449 and MCA on behalf of various contractors. This agreement governs, inter alia, referral, hiring, grievance, and arbitration procedures, and provides for hours of work, holidays, overtime and shift work, pensions, work rules, and subcontracting. Bryan's contract with the University was bid based on the hourly rate contained in this agreement. When Bryan was awarded the contract, Local 449 and University representatives held a meeting for the purpose of designating a new foreman to replace a retiring foreman. When issues arose regarding the scope of the foreman's authority, Local 449 approached the University's representatives to resolve those issues, without involvement by Bryan. The record shows that when steamfitters were subject to discipline, the University

decided on the severity of discipline to be imposed and reserved exclusive authority to modify that discipline without any involvement by Bryan representatives.

When King and Jadlowiec were laid off in October 1989, the decision to do so was made by Arthur Van Conklin, the University's Director of Physical Plant Operations and Maintenance, after consultation with LaGuardia and without involvement by Bryan representatives. When Local 449 objected that the University did not give twenty-four hours' notice of the layoffs, it directed this objection to Van Conklin and the University. As a result, Van Conklin altered the layoff date to comply with this requirement. Bryan was neither consulted nor in any manner involved with the decision to alter the layoff date.

The hearing examiner, in his proposed decision and order, found that the University is a public employer as defined in Section 301(1) of the Act, 43 P.S. § 1101.301(1). In addition to the facts previously set forth, the hearing examiner found that the foremen can effectively recommend the hiring by the University of additional men for work projects; that Van Conklin and LaGuardia had been responsible for disciplining employees involved in various incidents of misconduct; that Jadlowiec had been given a warning because he did not personally advise LaGuardia that he was leaving the work site; that Bryan pays the bargaining unit members and takes care of the required withholdings; and that the University does not maintain any payroll, benefit, or insurance data or documents for any members of Local 449. The hearing examiner concluded that the Board did not have jurisdiction to proceed with the merits of the unfair labor practice charge because the University and Bryan are joint employers of the steamfitters involved in this case, relying on *Costigan v. Philadelphia Finance Department Employees Local 696*, 462 Pa. 425, 341 A.2d 456 (1975), and *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974).

The Board's final order dated May 14, 1991 affirmed the hearing examiner's proposed decision and order and held that under prevailing case law, Bryan maintains control over signif-

icant aspects of the employment relationship so as to be at least a joint employer with the University. The Board stated that in a joint employer situation where one of the employers falls outside of the Act, as does Bryan in this instance, the Board cannot exercise jurisdiction.

## II

The test for determining the fundamental question of whether an employer-employee relationship exists has been set forth by the Pennsylvania Supreme Court in *Sweet*:

The relation of employer and employe exists when a party has the right to select the employe, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done.... The duty to pay an employe's salary is often coincident with the status of employer, but not solely determinative of that status.

*Id.*, 457 Pa. at 462, 322 A.2d at 365 (citations omitted). In *Costigan*, the Supreme Court applied the *Sweet* standard and found that a joint employment relationship existed because no single entity controlled all of the terms of the employment relationship. In that case, the Register of Wills for the City of Philadelphia was found to have the exclusive power to hire, fire, promote, and direct the work of the employees. The City of Philadelphia, on the other hand, paid most of the employee salaries and other compensation costs of the office and exercised considerable control over the fringe benefits. Thus, both were deemed employers for purposes of the Act. In the present case, the parties do not dispute that the University exercises considerable control over the hiring, firing, and direction of the employees in question, a situation analogous to that of the Register of Wills in *Costigan*. As with the City of Philadelphia in *Costigan*, Bryan actually pays the employees' salaries and other compensation costs and, by agreeing to the collective bargaining agreement between MCA and Local 449, has some control over the fringe benefits accorded the employees.

■ Local 449 contends that the only function indisputably controlled by Bryan is the payroll function, which Local 449 argues is insufficient to support a conclusion of employer-employee status according to *Sweet*. However, the holding in *Sweet* merely states that the duty to pay an employee's salary is not by itself determinative of employer status. It does not mean that evidence of payroll administration is to be ignored. Further, the record supports the Board's determination that Bryan controls some elements of the employment relationship beyond that of the payroll function, such as maintaining personnel files and preparing the necessary benefit and insurance data, and therefore must be designated at least a joint employer of the steamfitters at issue. Therefore, the hearing examiner and the Board properly applied the standards set forth in *Sweet* and *Costigan* in finding a joint employer relationship.

## III

■ The Board nonetheless erred in concluding that it lacked subject matter jurisdiction over the underlying charge because one of the two joint employers is beyond the Board's jurisdiction. Despite the Board's finding of a joint employer relationship, such relationship does not automatically preclude exercise of the Board's jurisdiction under the facts presented in this case. Even though Bryan may be considered a joint employer, it is only marginally so where it is undisputed that the University exercises considerable control over the hiring, firing, and direction of the employees. Under these facts, a remedial order directed only against the University could remedy any potential violation based on the underlying charge.

■ In a case involving a finding of an unlawful discharge under Section 1201 of the Act, the appropriate remedy is reinstatement, back pay offset by interim earnings, restoration of benefits, and posting a notice. *Bensalem Township*, 19 Pa.P.E.R. 19010 (1987). With regard to reinstatement, it is undisputed that the University actually *controls* the hiring of the steamfitters, despite the hearing examiner's conclusion

that the foremen could effectively *recommend* hiring. This leads to the conclusion that the Board could direct the University to re-employ Jadlowiec and King without affecting Bryan's interests. With regard to posting a notice, the University retains control over its own facilities and its physical plant would be the appropriate location for such posting. Furthermore, assuming that the two employees prevail in their charge of unlawful discharge before the Board, the Board could appropriately direct that the University provide for the back pay and restoration of benefits of the two employees inasmuch as the University already pays for steamfitter salaries and benefits through the subcontracting agreement with Bryan. The contract between the University and Bryan shows that the University pays for the work performed on a per-worker hourly basis consistent with the collective bargaining agreement between MCA and Local 449. Such a remedial order would not affect Bryan's interests because the back pay award would be directed only against the University. Moreover, the inherent principle underlying the conclusion that the Board may not decline to exercise jurisdiction in this case is that it was the conduct of University officials which Local 449 has alleged violated the Act, and accordingly, it is the University which should be required to take proper remedial steps to make whole the employees should they prevail on the merits.

Cases cited by the Board for the proposition that it may not exercise jurisdiction where one of the two joint employers is not subject to the Act are inapposite to this Court's decision. In *Delaware River Port Authority of Pennsylvania & New Jersey v. Board of Arbitration of Claims*, 45 Pa.Commonwealth Ct. 281, 405 A.2d 600 (1979), the Board of Claims did not have jurisdiction over the Port Authority because the Port Authority lacked an integral connection to the Commonwealth. Contrary to the Board's suggestion, this Court's opinion was not premised upon a finding of joint employer status.[2] In

2. Similarly, the Board argues that in *Pennsylvania Labor Relations Board v. Delaware River Port Authority*, 13 Pa.P.E.R. 13072 (1982), it decided not to exercise jurisdiction because of the mere existence of a joint employer relationship. A review of that decision reveals that the

*National Labor Relations Board v. Doug Neal Management Co.*, 620 F.2d 1133 (6th Cir.1980), the Court of Appeals considered a situation where a building owner hired a manager to operate its building. The owner then directed the manager to terminate certain employees, after which the employees' union filed an unfair labor practice charge naming only the manager. The National Labor Relations Board found a violation, but the Court of Appeals denied enforcement because of the union's failure to name the building owner, who was considered to be an indispensable party in whose absence complete relief could not be obtained. In the matter sub judice, the employees could obtain complete relief against the University if they prevail on the merits.

This Court's decision is underscored by the fact that the Board's holding would deprive the employees of any relief whatsoever. Under the current collective bargaining agreement between Local 449 and MCA, an arbitrator's power to remedy a contractual violation extends only to matters arising between the two parties. Thus the arbitration process would be rendered ineffective because the University, and not Bryan, controls the hiring and firing. An arbitrator would be without authority to effect a remedy against the University under the facts presented here. Also, this Court notes that Local 449 did initially proceed against Bryan before the National Labor Relations Board, but the NLRB informally advised Local 449 that it was not the proper forum within which to proceed.

This Court is further persuaded that the Board must assume jurisdiction under the specific facts presented in this matter because of the possibility that public employers may evade requirements of the Act by simply delegating some of their employer responsibilities to a private employer. To deny employees a forum in which to settle their disputes such as that presented here would open the doors for a concerted disregard for the public interest underlying the Act. This surely was not the intent of the General Assembly in its adoption of the Act. Accordingly, the Board erred in deter-

Board declined to exercise jurisdiction solely because the Authority did not fall within the definition of a "public employer" under the Act.

mining that it lacked jurisdiction to hear and decide the unfair labor practice charge filed by Local 449, and its order is therefore reversed.

## ORDER

AND NOW, this 27th day of July, 1992, the final order of the Pennsylvania Labor Relations Board is reversed and this matter is remanded for further proceedings.

Jurisdiction relinquished.