**CONFERENCE OF PENNSYLVANIA COLLEGE POLICE LODGES OF the FRATERNAL ORDER OF POLICE, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Oct. 20, 2000.

As Amended Jan. 2, 2001.

---

Sean T. Welby, Harrisburg, for petitioner.

John B. Neurohr, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

The Conference of Pennsylvania College Police Lodges of the Fraternal Order of Police (FOP) appeals from a final order of the Pennsylvania Labor Relations Board

(PLRB) affirming a hearing officer's proposed decision and order to dismiss the FOP's petition (Petition) to represent campus police officers employed by the State System of Higher Education (SSHE) for purposes of collective bargaining under the Policemen and Firemen Collective Bargaining Act (Act 111).[1] These employees currently are represented by locals of the International Union, United Plant Guard Workers of America (UPGWA) pursuant to their certification as a unit under the Public Employees Relations Act [2] (PERA).

On November 25, 1998, the FOP filed its Petition pursuant to Act 111 and the Pennsylvania Labor Relations Act [3] (PLRA), seeking to represent the non-managerial campus police officers employed at the fourteen universities that comprise the SSHE. Under section 1 of Act 111, 43 P.S. § 217.1, policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth are given the right to bargain collectively in accordance with the dictates of Act 111. In an attachment to its Petition, the FOP alleges, *inter alia*, that the Commonwealth and SSHE are joint employers of the campus police officers, and the FOP indicates its intent to present evidence that these officers effectively act as police and, therefore, should be included under Act 111's coverage. *See American Federation of State, County and Municipal Employees, Council 13, AFL–CIO v. Pennsylvania Labor Relations Board,* 140 Pa.Cmwlth. 352, 593 A.2d 4 (1991) (applying a two-pronged test to determine whether certain employees are police within the meaning of Act 111).

On January 8, 1999, SSHE filed a motion to dismiss the FOP's Petition, contending that the proposed bargaining unit

could not be certified under Act 111. Relying on the State System of Higher Education Act [4] (Act 188) and the interpretation of Act 188 in *Conference of Pennsylvania College Police Officers, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 113 Pa. Cmwlth. 431, 537 A.2d 108 (1988), *appeal denied,* 521 Pa. 607, 555 A.2d 117 (1988), SSHE contended that SSHE alone is the public employer of the employees in the proposed bargaining unit, possessing all of the traditional employer duties and responsibilities. Further, SSHE asserted that it is neither the Commonwealth nor a political subdivision of the Commonwealth, and, therefore, it is not subject to the jurisdiction of the PLRB under Act 111. (*See* SSHE's motion to dismiss, ¶¶ 3–4.) Subsequently, the Commonwealth and UPGWA filed comparable motions to dismiss the FOP's Petition.

In answering these motions, the FOP admitted that SSHE is not the Commonwealth or a political subdivision thereof; [5] however, the FOP reasserted its position that the subject employees were employed by the Commonwealth as joint employer with SSHE, thereby making SSHE subject to Act 111, the PLRA and the jurisdiction of the PLRB. Specifically, the FOP contended that the Commonwealth is statutorily designated as a joint employer of the proposed unit members and, in addition, the Commonwealth is a joint employer because it controls significant aspects of the members' employment. (*See* FOP's answer to motion to dismiss, ¶¶ 3–5.) The PLRB scheduled a hearing on the matter, and the parties filed briefs in support of their respective motions to dismiss.

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

2. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1106.2301.

3. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.

4. Created by section 2002–A of the Public School Code of 1949, Act of March 10, 1949,

P.L. 30, *as amended,* added by section 2 of the Act of November 12, 1982, P.L. 660, *as amended,* 24 P.S. §§ 20–2001–A to 20–2017–A.

5. In Act 188, the General Assembly established SSHE as a government instrumentality. 24 P.S. § 20–2002–A(a).

On July 7, 1999, the hearing examiner issued a proposed order of dismissal. Based on a review of Act 188, the hearing examiner concluded that SSHE is the sole employer of the campus police officers. The hearing examiner then determined that, because SSHE is not an employer within the meaning of Act 111, the proposed bargaining unit is not covered by Act 111 as a matter of law. Consequently, the hearing examiner dismissed the FOP's Petition without conducting an evidentiary hearing on the Commonwealth's control over the officers' employment.

The FOP filed timely exceptions to the proposed decision and order, contending that the hearing examiner erred by: (1) holding that the SSHE is the sole employer of the members of the proposed unit as a matter of law; (2) holding that the Commonwealth is not a joint employer of the members of the proposed unit as a matter of law; and (3) issuing a proposed dismissal order without holding a hearing to permit the FOP an opportunity to prove that the Commonwealth controls significant aspects of the employment of the members of the proposed unit. Rather, the FOP again maintained that, as a matter of fact and law, the Commonwealth is a joint employer of the members of the proposed bargaining unit.

On October 19, 1999, the PLRB issued a final order dismissing the FOP's exceptions and declaring the proposed order of dismissal absolute and final.[6] The FOP now appeals to this court from the PLRB's final order.[7]

In its appeal, the FOP again argues that the campus police officers in the proposed bargaining unit are employed by the Commonwealth by virtue of the Commonwealth's status as joint employer with SSHE. The FOP first contends that Act 188 itself recognizes that these employees have at least two joint employers. Further, the FOP asserts that, even without Act 188's statutory designation of the Commonwealth as joint employer of the members of the proposed unit, the PLRB was required to hold a hearing to resolve the issue of joint employer status and make findings of fact with respect to the level of control exercised by the Commonwealth over the employment of campus police officers. The FOP maintains that absent such a factual analysis, the PLRB's order dismissing the Petition is not supported by substantial evidence. We disagree with both of the FOP's arguments.

I.

In 1982, the General Assembly enacted Act 188, thereby creating SSHE from what previously had been the Commonwealth's thirteen state colleges and Indiana University of Pennsylvania. Section 2002–A(a) of Act 188, 24 P.S. 20–2002–A(a). Section 2001–A(7) of Act 188 specifically designates SSHE as the employer by providing: '**Employer**' shall mean the Board of Governors of the State System of Higher Education as the *successor* employer to the Commonwealth of Pennsylvania. 24 P.S. § 20–2001–A(7) (emphasis added). In *Board of Governors of State System of Higher Education v. Pennsylva-*

---

6. Although the PLRB agreed with the hearing examiner's analysis, the PLRB also presented an alternate basis for dismissing the FOP's Petition that was not mentioned by the hearing examiner. Specifically, the PLRB concluded that the doctrine of *res judicata* precluded the FOP from raising its joint employer argument because the FOP could have raised the issue in *Conference of Pennsylvania College Police Officers*, a prior proceeding in which the FOP sought to represent these same employees for purposes of collective bargaining under Act 111. However, be-

cause we affirm the PLRB with respect to its first basis for dismissal of the FOP's Petition, we need not address this alternate basis.

7. In an appeal from a final order of the PLRB, this court's scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 406, 528 A.2d 1024 (1987).

*nia Labor Relations Board,* 99 Pa.Cmwlth. 520, 514 A.2d 223 (1986), *appeal denied,* 515 Pa. 585, 527 A.2d 545 (1987), we focused on this definition and, based on its clear and unambiguous language, concluded that, as a matter of law, SSHE was the sole employer of its managerial and professional employees. In doing so, we rejected arguments, similar to those made by the FOP here, that the Commonwealth was a joint employer along with SSHE because the Commonwealth controlled significant aspects of the employment relationship.[8] Because the provision designating SSHE as the successor employer to the Commonwealth does so without qualification, making no distinction between managerial and professional employees and any other employees, the plain language of the statute would dictate that the result in *Board of Governors* apply with equal force with respect to non-instructional employees of SSHE, such as the campus police.

The FOP disagrees and, in fact, relies heavily on *Board of Governors* to support its claim that, although SSHE may be the sole employer of its *professional and managerial* employees, the Commonwealth and SSHE jointly employ *non-instructional* employees, including the campus police officers. The FOP asserts that, in *Board of Governors,* we identify a distinction between professional and non-professional employees, relying on the following language from that case:

> Under [Act 188], the legislature has not only defined employer as the Board of Governors of SSHE, but has also imposed the duty of negotiating collective bargaining agreements upon the Board of Governors through its chancellor. 24 P.S. §§ 20–2001–A(7), 20–2003–A(c).
>
> . . . .
>
> In [Act 188], the legislature specifically provided with respect to non-instructional employes the Board of Governors of SSHE shall arrange for coalition bargaining with the Commonwealth. 24 P.S. § 20–2003–A(c). The effect of this provision is to require SSHE and the Commonwealth to bargain jointly with all of the employes in the bargaining unit consisting of non-instructional employes. See 24 P.S. § 20–2001–A(3). Thus, the legislature distinguished between *negotiations* with professional employes, which are to be conducted solely by SSHE, and *negotiations* with non-instructional employes which are to be conducted jointly by SSHE and the Commonwealth. Because every statute must be construed to give effect to all its provisions, 1 Pa.C.S. § 1921(a), we cannot ignore this clear legislative mandate. We must therefore conclude that the Commonwealth and SSHE are not joint employers, *and* are not required to negotiate jointly with respect to professional and managerial employes.

*Id.* at 226–27 (emphases added). This distinction rests on the coalition bargaining arrangement mandated by section 2003–A(c) of Act 188, which provides:

> Collective bargaining agreements in force at the time of enactment of this act shall remain in force for the term of the contract. New collective bargaining

---

8. In *Board of Governors,* SSHE and the Commonwealth sought to amend the certifications of the managerial and professional bargaining units of the state college system to substitute SSHE in place of the Commonwealth as public employer on the basis of the statutory language of Act 188. The union opposing the requested amendment asserted that, because the Commonwealth continued to exercise control over aspects of the terms and conditions of employment of these employees, the Commonwealth and SSHE should be designated as joint public employers of these bargaining units. We disagreed, noting that the legislature's intention that SSHE be the public employer was evidenced by the legislature's definition of employer in Act 188. We observed that "[t]he denomination of SSHE as the successor employer clearly indicates that the legislature intended to replace the Commonwealth as employer." *Id.* at 226. Consequently, we concluded that, as a matter of law, SSHE alone was the employer of the managerial and professional employees of SSHE, even though the Commonwealth controlled some aspects of the employment relationship.

agreements with professional employes shall be negotiated on behalf of the system by the chancellor. *The board shall make a coalition bargaining arrangement with the Commonwealth for the negotiation of new collective bargaining agreements with noninstructional employes.*

24 P.S. § 20–2003–A(c) (emphasis added). In turn, section 2001–A(3) of Act 188 defines coalition bargaining as:

two (2) or more *employers bargaining jointly* with all of their employes in a particular category or bargaining unit so that one collective process would determine the conditions of employment for all employers in the appropriate units involved.

24 P.S. § 20–2001–A(3) (emphasis added).

Relying on Act 188's coalition bargaining arrangement and our discussion of it in *Board of Governors,* the FOP reasons that:

if SSHE must enter into coalition bargaining with respect to non-instructional employees, 24 P.S. § 20–2001–A(c), and coalition bargaining by its very definition means that there are two (2) or more employers, then it must necessarily follow that, as a matter of law, non-instructional employees such as those in the proposed unit have more than one employer. Clearly SSHE is one of those employers. The court in *Board of Governors* tells us that the other, for non-instructional employees, is the Commonwealth.

9. We note that nothing in the coalition bargaining arrangement diminishes SSHE's authority over the terms and conditions of employment of its employees as set forth in the various other provisions of Act 188. Indeed, in granting SSHE broad employment powers, Act 188 specifically refers to the negotiation of collective bargaining agreements under PERA, either solely or in a coalition bargaining arrangement with the Commonwealth, but makes absolutely no mention of negotiation of collective bargaining agreements under Act 111.

10. Contrary to the FOP's contention, the distinction we draw in the language quoted from

(FOP's brief at 12.) By employing this reasoning, the FOP misconstrues both Act 188 [9] and *Board of Governors.* [10]

 Here, the FOP would have us read Act 188's reference to employers bargaining jointly in the definition of coalition bargaining to mean joint employers bargaining. However, the definition of coalition bargaining does not refer to the two or more employers as joint employers of the same employees. Instead, the focus is on ensuring that there is one bargaining process for all similarly situated employees of the Commonwealth and SSHE. Indeed, like the PLRB, we see nothing in the coalition bargaining arrangement in Act 188 that negates Act 188's specific designation of SSHE as the successor employer to the Commonwealth, and, as stated previously, the denomination of SSHE as successor employer, *without limitation,* clearly indicates the General Assembly's intent to have SSHE replace the Commonwealth as employer of *all* SSHE's employees. *See Board of Governors.* In light of Act 188's definition of employer, it seems apparent that, through its coalition bargaining arrangement, the General Assembly is merely directing SSHE and the Commonwealth to bargain together over the terms and conditions of employment regarding their respective non-professional employees in common categories of employment, and did not intend to designate SSHE and the Commonwealth as joint employer of the same employees. [11] Instead, the Com-

*Board of Governors* is in the area of collective bargaining negotiations, not employer status. These are two distinctly different inquiries, and we discuss both in *Board of Governors.* However, in the portion of that case quoted by the FOP here, we merely recognize that professional and managerial employees are employed solely by SSHE *and* negotiate solely with SSHE, as opposed to non-instructional employees who, although also employed solely by SSHE, must negotiate jointly with SSHE and the Commonwealth.

11. As the PLRB observed, all Act 188 establishes by this provision is a multi-employer bargaining arrangement similar to that com-

monwealth remains the sole employer of officers at Commonwealth facilities, and SSHE is the sole employer of officers at SSHE campuses. To conclude otherwise would contravene this clear legislative directive.[12]

To the extent that the coalition bargaining arrangement could be viewed as creating ambiguity in Act 188, we also agree that to read the provision as the FOP suggests would violate the basic tenets of statutory construction, the purpose of which is to effectuate the intention of the General Assembly. *See* sections 1921(a) and (c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a) and (c).

Specifically, to interpret the coalition bargaining arrangement as creating joint employer status for SSHE and the Commonwealth would render meaningless the General Assembly's designation of SSHE as successor employer to the Commonwealth; further, it would make the provision authorizing coalition bargaining superfluous because the Commonwealth already would be at the bargaining table by virtue of its joint employer status. Thus, the FOP's interpretation would violate the rule of statutory construction that every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa.C.S. § 1921(a); 1922(2).

Accepting the FOP's position would also violate the rule of statutory construction that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1). The FOP's construction of Act 188 would place the Commonwealth in the position of being a successor employer to itself, a result that, as pointed out by the hearing examiner, violates this rule of statutory construction. Further, under the FOP's interpretation, the statutory language that makes the Commonwealth an employer of the employees of SSHE would, logically, also make SSHE an employer of the Commonwealth's employees, even at facilities unrelated to SSHE operations. Certainly, the legislature, in creating the SSHE and providing for its legal separation from the Commonwealth, did not intend such a result.

## II.

 We also reject the FOP's argument that, regardless of who the employer is for the purposes of Act 188, the PLRB was required to conduct a hearing to determine whether the Commonwealth is a joint employer in fact of the campus police officers. In light of the conclusion that Act 188 designates SSHE as sole employer of the campus police, there was no need for the hearing examiner to conduct a hearing re-

monly found in the private sector. Act 188's coalition bargaining arrangement is not unlike the various multi-employer bargaining arrangements, voluntarily entered into in private sector collective bargaining, in which a number of individual employers bargain as a group with the union representing a particular class of employees, with each employer agreeing to be bound by the terms and conditions of employment resulting from the multi-employer bargaining with their employee's representative. However, such an arrangement does not result in the conclusion that the employers engaged in the multi-employer bargaining arrangement are joint employers of all the employees of each individual employer. So too here, the fact that Act 188 mandates a coalition bargaining arrangement between SSHE and the Commonwealth does not make the Commonwealth a joint employer of SSHE's employees.

12. In *PSSU, Local 668, AFL–CIO v. Pennsylvania Labor Relations Board*, 740 A.2d 270 (Pa. Cmwlth.1999), this court adopted the General Assembly's designation that Workers' Compensation Judges were management level employees. While recognizing that, in most cases, we need to examine the duties of an employee's position prior to determining whether the employee was a management level employee, we noted that the legislature's specific designation of WCJs as management level employees obviated the need for us to make such an examination because we would be powerless to alter it. Similarly here, Act 188's designation of SSHE as the employer of individuals working for SSHE eliminates the need to make the factual determination requested by the FOP.

garding the FOP's contention that the Commonwealth controls significant conditions of the employment of the campus police and is, by virtue of that control, a joint employer of the campus police. This issue was settled in *Board of Governors,* in which this court rejected the argument that the Commonwealth was a joint employer of the professional and managerial employees of SSHE as a result of the Commonwealth's control over various aspects of the employment relationship.

Accordingly, because the hearing examiner correctly dismissed the FOP's Petition without a hearing,[13] we affirm.

**13.** Further, the argument is made that, even if SSHE and the Commonwealth were joint employers of the campus police officers, Act 111 coverage would not apply because SSHE is not within the Act 111 jurisdiction of the PLRB. *See In the Matter of the Employes of the State System of Higher Education,* 18 PPER 18000 (Final Order 1986) (holding that where one of two joint employers is not covered by Act 111, the other similarly is not covered by Act 111). *But see United Associa-*

*ORDER*

AND NOW, this 20th day of October, 2000, the order of the Pennsylvania Labor Relations Board, dated October 19, 1999, is hereby affirmed.

*tion of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Steamfitters Local 449, AFL–CIO v. Pennsylvania Labor Relations Board,* 149 Pa.Cmwlth. 411, 613 A.2d 155 (1992) (holding that the PLRB may have jurisdiction over one employer covered by PERA acting jointly with another even where the other employer is not subject to the PLRB's jurisdiction).